WINBLAD, Appellee,

v.

DESKINS et al., Appellants.

[Cite as *Winblad v. Deskins*, 150 Ohio App.3d 527, 2002-Ohio-7092.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19199.

Decided Dec. 20, 2002.

C. Douglas Copley, for appellee.

Keith A. Fricker, for appellant.

Fᴀɪɴ, Judge.

{¶ 1} Defendants-appellants Jammy and Sian Deskins appeal from an order of the trial court disqualifying their attorney. They contend that the trial court erred by granting plaintiff-appellee Eric Winblad's motion to disqualify their attorney, Keith Fricker. We conclude that the trial court was within its discretion when it ordered the disqualification. Accordingly, the order of the trial court is affirmed.

I

{¶ 2} The trial court found the facts to be as follows. There is evidence in the record to support the trial court's findings.

{¶ 3} "[Winblad] retained Attorney John Herndon, who shares office space with [Deskins's] attorney, [Keith] Fricker. Attorney John Herndon withdrew from the case when he became aware of the potential conflict of interest. [Winblad] now moves to disqualify [Deskins's] attorney.

{¶ 4} "[Winblad] entered into and executed a contract to purchase a business from [Deskins]. [Winblad] alleges that [Deskins] subsequently breached the contract, and [Winblad] sought legal counsel from Attorney John A. Herndon,

hereinafter 'Mr. Herndon.' [Winblad] visited Mr. Herndon two times and discussed the sale of the business and information regarding the cause of action. [Winblad] presented documents concerning the contract and discussed legal strategies with Mr. Herndon. Mr. Herndon reviewed the contract and thereafter, on November 13, 2000, wrote a letter to [Deskins] explaining [Winblad's] claims, allegations, settlement terms, and possible future legal action. Mr. Herndon wrote that he had been retained by [Winblad], and he requested that [Deskins] or [Deskins's] attorney respond to Mr. Herndon within five days of receipt of the letter. Mr. Herndon billed [Winblad] $125.00 for this service, but [Winblad] has not paid this bill. A few days after sending the letter, Mr. Herndon heard over the office intercom that [Deskins] was on the line for Mr. Fricker. Mr. Herndon recognized the potential conflict of interest, consulted with attorney Robert Casper regarding the conflict, and informed [Winblad], by telephone, that he could no longer represent him. [Winblad] did not consent to Mr. Fricker representing [Deskins] in this case.

{¶ 5} "[Deskins] has a long-term relationship with attorney Keith Fricker, and [Deskins] wants Mr. Fricker to represent him in this case. Mr. Fricker has represented [Deskins] on various occasions and Mr. Fricker represented [Deskins] when he purchased the business that is the subject of the current lawsuit. When [Deskins] received the letter from Attorney John Herndon, he became concerned that the letter came from the same address as Mr. Fricker and he called Mr. Fricker. Mr. Fricker advised [Deskins] that he was a sole practitioner and not in partnership with anyone. [Deskins] asserts that removal of Mr. Fricker would create a hardship because additional funds would be required and a new relationship would have to be established.

{¶ 6} "Attorneys John Herndon, Keith Fricker, Robert Casper, and Terry Posey share office space in the same building located at 7460 Brandt Pike, Huber Heights, Ohio. The four attorneys have been in this building since 1996. All four attorneys' names are on a sign outside of the office. The offices share the same phone number and incoming calls are transferred to the appropriate attorney. The offices also share the same fax number and use the same copying machine. The building has one common entrance and clients are directed to the attorneys' offices. Closed files are kept in locked file cabinets in the common area. Mr. Herndon keeps open files in a locked file cabinet next to his secretary's desk. When Mr. Herndon learned of the conflict, he closed this file and stored it in a storage facility that is shared by Mr. Herndon, Mr. Casper, and Mr. Posey. Mr. Herndon has co-counseled cases with Mr. Fricker, and is presently co-counsel in six cases with Mr. Fricker. The four attorneys do not represent that their relationship forms either a partnership or a firm. Mr. Herndon and Mr. Fricker have different secretaries and do not co-mingle files. Mr. Herndon and Mr.

Fricker have separate letter head and separate offices. Mr. Herndon made no disclosures to Mr. Fricker and had no further discussion with Mr. Fricker concerning any information disclosed by [Winblad]."

{¶ 7} Winblad brought this action against the Deskinses for breach of contract, fraud or misrepresentation, and conversion. The Deskinses filed an answer and counterclaim. Winblad replied to the counterclaim and filed his motion to disqualify the Deskinses' attorney. The trial court conducted an evidentiary hearing on the motion to disqualify. Following that hearing, the trial court entered findings of fact and conclusions of law, granted the motion, and disqualified the Deskinses' attorney, Keith Fricker. From that order, the Deskinses appeal.

## II

{¶ 8} The Deskinses' sole assignment of error is as follows:

{¶ 9} "The trial court erred in granting plaintiff's motion to disqualify the defendants' counsel."

{¶ 10} A trial court has wide discretion in determining whether to disqualify counsel as part of its duty to supervise members of the bar appearing before it. *Royal Indemn. Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 35, 27 OBR 447, 501 N.E.2d 617.

{¶ 11} In the case before us, the trial court concluded that an appearance that Fricker and Herndon and the other two attorneys sharing office space constituted a law firm was created by their four names appearing on a sign outside the building, a common entrance and waiting area, the appearance that the attorneys had common access to confidential information stored in file cabinets, common fax lines and copy machines, and the fact that phone calls and clients visiting the office were received by any available personnel within the office, and then referred to the appropriate attorney. The trial court concluded:

{¶ 12} "Based on this level of association, it is reasonable that Plaintiff and the public would view this association as a firm, and they should be regarded as a firm for the purposes of the rules."

{¶ 13} Because the office-sharing arrangement reasonably appeared to the public to be a law firm, the rules respecting the imputation of knowledge of one member of the firm to other members are appropriately applied. As the trial court noted: "[I]n the case at hand, [Winblad] presented confidential documents to Mr. Herndon, discussed legal strategies with Mr. Herndon, and retained Mr. Herndon to write a letter addressed to [Deskins], which referenced possible future legal action. These confidences are imputed to the entire firm and in the

interest of avoiding the appearance of impropriety each attorney associated with the firm must be disqualified from participating in the case."

{¶ 14}  We agree with the trial court's conclusions.  Any doubts as to the existence of an asserted conflict of interest must be resolved in favor of disqualification in order to dispel any appearance of impropriety.  *Kala v. Aluminum Smelting* (1998), 81 Ohio St.3d 1, 11, 688 N.E.2d 258.  One important function of the judicial system is to promote not only the reality that litigation is adjudicated fairly, but the perception of litigants, and the public generally, that litigation is adjudicated fairly.  To that end, it is important to dispel any reasonable doubts that a litigant might have that his confidences with his attorney might be compromised.  On these facts, we conclude that Winblad might reasonably doubt whether his confidential communications with his attorney, John Herndon, while Herndon was representing him, to the point of preparing and sending a letter to Deskins concerning this controversy, were adequately preserved.

{¶ 15}  Although there will be some inconvenience and expense to the Deskinses in having to seek new counsel to represent them in this litigation, we conclude that the trial court was within its discretion in determining that the appearance of impropriety that would otherwise result outweighs that inconvenience and additional expense.

{¶ 16}  In reaching this conclusion, we note that we share the trial court's conclusion "that the dual representation came about inadvertently and nothing heretofore said is intended as a criticism of the professional integrity of Mr. Fricker."

{¶ 17}  The Deskinses' sole assignment of error is overruled.

### III

{¶ 18}  The Deskinses' sole assignment of error having been overruled, the order of the trial court disqualifying her counsel is affirmed.

Judgment affirmed.

BROGAN and FREDERICK N. YOUNG, JJ., concur.