DECISION
{¶ 1} Appellants, Michael D. and Beth E. Vanhuss, and Jacqueline K. Scott, appeal from a decision of the Franklin County Court of Common Pleas that granted a motion of appellee, Scott C. Campbell, to disqualify their attorney, Robert Ellis, and set forth the following assignment of error:
The trial court erred to the substantial prejudice of the Defendants-Appellants when it disqualified their attorney on the basis of conflict of interest, and on the basis of lack of waiver of disqualification by the Plaintiff-Appellee.
 {¶ 2} Given the procedural posture of this case, there are few undisputed facts before this court. In 1998, appellee and Matthew Lammers were partners in NetSet, an internet service provider. In 1998, NetSet agreed to sell its assets to Independent Outlook, Inc., and Lammers asked Ellis to review the asset purchase agreement. Ellis testified:
Q. When you were hired by or asked by Netset, I guess you were already working for them, to review this document, what was the scope of what you were supposed to be doing for them?
A. To review it to see — I mean, they said that they wanted me to look at this document and if it needed to be revised, revise it. You know, Netset called me.
Netset was on a shoestring budget. They called me once in awhile. And I did basically just what I was told and I limited myself to that.
Q. Okay. Whose interest did you believe you were representing and protecting in this transaction?
A. Clearly the partnership.
Q. Okay. That would include the partners?
A. Yes, Matt and Scott, correct.
* * *
Q. Okay. All right. Can you think of any other terms of the asset purchase agreement, Plaintiff's Exhibit 1, that you would have negotiated with Mr. Wittenberg?
A. I'd have to look at my comments that I sent to you that are embedded in my revisions. I'm sure there were. There were a lot of revisions that I made. Whether I negotiated any of them, I don't recall.
My recollection was I took a document. I revised it to make it more coherent. And whether any particular revision was negotiated, I just don't recall. I don't believe so, but I don't recall.
Q. You attended the closing?
A. Yes, I did.
Q. Why did you attend the closing?
A. Because Netset asked me to show up.
Q. Do you know why they asked you to do that?
A. I guess they wanted to have representation at the closing to make sure that all the documents were there or whatever they wanted to do.
Q. Okay. And is that what you understood your role was at the closing of Netset partnership?
A. Normally at a closing I make sure that everything gets signed and everything gets put — filed with the appropriate parties and so forth.
* * *
A. Because my role was to show up at the closing and disappear.
* * *
Q. Did you tell your client at any time that they needed to check after the closing to ensure that that security interest had been perfected by the proper legal filing?
A. You're using legal terms. I told them about — we went over the asset purchase agreement. I told them what it entailed at the time at the closing. After the closing whether they followed up, I don't know.
(Ellis Depo. at 25-26, 29-30, 34-35, 37.)
 {¶ 3} The asset purchase agreement warranted that the buyer, Independent Outlook, Inc., was in good standing with the state and authorized to sign the agreement. The purchase price for NetSet was $360,000, with $160,000 due upon execution of the asset purchase agreement and $200,000 to be paid in quarterly installments. A promissory note was signed by Susan Wittenberg, as president of Independent Outlook, Inc., and one of the witnesses to the note was Ellis. The personal guarantee was signed by Eric and Susan Wittenberg, Jacqueline Scott, and Michael and Beth Vanhuss. In his deposition, Ellis specifically denied that he was retained to review any of the attachments to the agreement and that he did not draft or review the promissory note or the personal guarantees.
 {¶ 4} Apparently some payments were made on the note but, eventually, the buyers defaulted and Campbell filed suit against Eric and Susan Wittenberg, Scott and the Vanhusses. The Wittenbergs are represented by other counsel and are not a party to this appeal. Ellis represents Scott and the Vanhusses.
 {¶ 5} All the parties filed virtually identical motions for summary judgment, alleging that Campbell never had personal possession of the note and, pursuant to R.C. 1303.38, cannot recover, and that Independent Outlook, Inc., did not exist as a corporation and, therefore, the parties could not be liable on a personal guarantee for a non-existent entity. The trial court overruled the motion for summary judgment based in part on answers given by the Wittenbergs to requests for admission in which they admitted they were shareholders and members of the Board of Directors of Independent Outlook, Inc., and that Independent Outlook, Inc., had purchased the assets of NetSet. In a later disciplinary hearing involving Eric Wittenberg, all of the parties admitted to signing the personal guarantee.
 {¶ 6} Following the disciplinary hearing and the deposition of Ellis, Campbell filed a motion to disqualify him as an attorney for the Vanhusses and Scott. Sometime following Ellis' deposition, and prior to the motion to disqualify being filed, Campbell was able to obtain a copy of the promissory note showing Ellis to be a witness. The present record is unclear as to who had a copy of the note which Campbell claimed from the outset he thought he had given to Ellis, or who gave it to Campbell or his attorney.
 {¶ 7} In granting the motion to disqualify, the trial court found a past attorney/client relationship between Ellis and Campbell, that the instant matter was substantially related to Ellis' past representation of Campbell, that there was an irrebuttable presumption of acquired confidential information, and that Campbell had timely filed the motion and had not waived any possible conflict.
 {¶ 8} A decision on a motion to disqualify an attorney is a final appealable order. Kala v. Aluminum Smelting RefiningCo., Inc. (1998), 81 Ohio St.3d 1. Disqualification of an attorney is a drastic measure that should not be imposed unless absolutely necessary. Musa v. Gillette Comm. of Ohio, Inc.
(1994), 94 Ohio App.3d 529. In reviewing a decision of the trial court, we must determine whether the court abused its discretion in granting the motion to disqualify. In order to find that the trial court abused its discretion, we must find more than an error of law or judgment, an abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Most instances of an abuse of discretion result in decisions that are unreasonable as opposed to arbitrary and capricious. AAAAEnterprises, Inc. v. River Place Community Urban RedevelopmentCorp. (1990), 50 Ohio St.3d 157. A decision that is unreasonable is one that has no sound reasoning process to support it.
 {¶ 9} In Dana Corp. v. Blue Cross Blue Shield Mut. ofNorthern Ohio (C.A.6, 1990), 900 F.2d 882, the Sixth Circuit Court of Appeals adopted the test for attorney disqualification first set forth in City of Cleveland v. Cleveland Elec.Illuminating Co. (N.D.Ohio 1976), 440 F.Supp. 193. The three-part test set out in Dana Corp. has been adopted by the courts of Ohio and provides, at 889:
* * * (1) [A] past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. * * *
 {¶ 10} The parties do not dispute that an attorney/client relationship existed between Campbell and Ellis, and, therefore, the first prong of the Dana test has been met.
 {¶ 11} As to the second prong of the Dana test, the moving party is required to show some evidence that the former representation substantially relates to the present adverse action. Hollis v. Hollis (1997), 124 Ohio App.3d 481. InPhillips v. Haidet (1997), 119 Ohio App.3d 322, at 327, the court stated:
Further guidance as to the meaning of "substantial relation" can be found by looking at the plain meaning of the words. "Substantial" is defined as "considerable in importance, value, degree, amount, or extent." American Heritage Dictionary (2 Ed. 1985) 1213. "Relation" is defined as "a logical or natural association between two or more things; connection." Id. at 1043. Taken together, the plain meaning of the phrase implies that the two cases must have a clear connection.
Thus, to have a substantial relationship, there must be a commonality of issues between the prior and present representation.
 {¶ 12} Appellants argue that the issues in this case involve only the promissory note and the personal guarantees and do not relate to Ellis' prior representation of Campbell in the revision and review of the asset purchase agreement or the sale of NetSet. Appellants seek to separate and compartmentalize the asset purchase agreement reviewed and revised by Ellis from the promissory note and the personal guarantee. We disagree.
 {¶ 13} Ellis represented both the partnership, NetSet, and the individual partners. He reviewed and revised the asset purchase agreement and the promissory note and guarantees were referred to as exhibits in the agreement and were part of the consideration for the sale. Ellis was a witness to the promissory note signed by Susan Wittenberg, as president of Independent Outlook, Inc. Regardless of whether Ellis actually wrote or revised the promissory note or the personal guarantees, we find there was a substantial relationship between those documents and the asset purchase agreement and the sale of NetSet.
 {¶ 14} Last, the moving party must show the attorney acquired confidential information. Appellants argue that, due to Ellis' limited representation of Campbell, he acquired no confidential information, and cite in support of their argument CentimarkCorp. v. Brown Sprinkler Serv., Inc. (1993), 85 Ohio App.3d 485;Friedman v. Kalail, Summit App. No. 20657, 2002-Ohio-1501;Kitts v. U.S. Health Corp. of S. Ohio (1994),97 Ohio App.3d 271; and In re Sheehan (N.D.Ohio 1996), 198 B.R. 516. Cases addressing issues relating to motions to disqualify are fact specific and, given the facts of the cases cited by appellants, we find them to be inapplicable. In Centimark, the attorney had represented a predecessor corporation, here, Ellis represented a partnership and testified he also represented Campbell. InFriedman, the issue was whether there was a substantial relationship between the former and presently pending litigation, the issue of confidentiality was not addressed. In Kitts,
plaintiff filed an action for wrongful death against a hospital and various doctors. One of the attorneys left the law firm that represented one of the defendant doctors and joined the plaintiff's attorney's law firm. The hospital and various doctors filed motions to disqualify. The court of appeals found the order for disqualification was improper because none of the parties seeking disqualification had been represented by the attorney's former law firm, and the doctor who had been represented by that firm was dismissed. Therefore, the court concluded that the moving parties were strangers to the attorney/client relationship and had no standing to seek disqualification, citing Morgan v.North Coast Cable (1992), 63 Ohio St.3d 156. In In re Sheehan,
the bankruptcy court found that disqualification was inappropriate where the attorney sought to be disqualified represented the partnership as a whole, not the individual members, and that the moving party had his own counsel. To the extent the court concluded that the moving party had to show the attorney had access to or was likely to have access to confidential information, this conclusion is contrary to Ohio law. In Phillips, the court stated, at 325:
"Only where an attorney himself represented a client in matters substantially related to those embraced by a subsequent case he wishes to bring against the former client, is he irrebuttably presumed to have benefited from confidential information relevant to the current case. In such limited situations there is no necessity to demonstrate actual exposure to specific confidences which would benefit the present client. But * * * in a case `where the attorney may be "vicariously disqualified" * * * the inference is treated as rebuttable.'" [Cleveland] at 210, quoting Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.
(C.A.2, 1975), 518 F.2d 751.
 {¶ 15} Here, Ellis personally represented the partnership and Campbell, and now personally represents Scott and the Vanhusses in matters substantially related to the prior representation, and the interests of Scott and the Vanhusses are adverse to Campbell. Thus, there is an irrebuttable presumption of shared confidential information. Brant v. Vitreo-Retinal Consultants, Inc. (Apr. 3, 2000), Stark App. No. 1999CA00283.
 {¶ 16} Appellants argue that Campbell has waived his right to seek disqualification of Ellis because he delayed two years after litigation was commenced to file the motion to disqualify. Motions to disqualify are drastic measures and may be used as strategic litigation tactics. Thus, "a party `may be held to have waived the right to object to an attorney's subsequent representation of an adverse interest by failure to timely raise the objection.'" Barberton Rescue Mission v. Hawthorn, Summit App. No. 21220, 2003-Ohio-1135, at ¶ 5.
 {¶ 17} Indeed, the record in this case demonstrates that the issue of Ellis' possible conflict of interest appeared at the commencement of litigation. The record contains a series of e-mails in which appellee's counsel sought to have Ellis voluntarily withdraw. However, until appellants filed their motions for summary judgment, Campbell was unaware they were asserting the non-existence of the corporation as a defense, as well as Campbell's inability to produce and prove possession of the promissory note and personal guarantees. It was not until after Ellis' deposition was taken that the note with Ellis' signature as a witness appeared, which is the same note appellants deny existed. Therefore, we cannot say the court abused its discretion in finding no waiver.
 {¶ 18} Campbell also argues that Ellis should be disqualified, pursuant to Disciplinary Rule 5-102(A), as he is likely to be called as a witness. In light of its ruling on other issues, the trial court found this issue to be moot. Likewise, we decline to address this issue. Crestmont Cleveland Partnershipv. Ohio Dept. of Health (2000), 139 Ohio App.3d 928, at 935.
 {¶ 19} Therefore, for the foregoing reasons, appellants' assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Petree and Klatt, JJ., concur.