OPINION
{¶ 1} Plaintiff-appellant, Brooke E. Perin, appeals the Franklin County Court of Common Pleas' decision to disqualify her attorneys, Russell A. Kelm and Cynthia L. Dawson, in her wrongful termination action.
 {¶ 2} On behalf of appellant, Kelm and Dawson filed a wrongful termination action against defendant-appellee, Honda RD Americas, Inc. ("Honda"), and the following defendants-appellees, who are part of Honda management: Jack Spurney, Fumio Hirose, Charles Allen, Fumitaka Hasegawa, Tetsuji Yamakawa and Yoshikatsu Takeuchi. Appellant alleged the following against appellees. Appellant worked for Honda for approximately 16 years, and her last position was manager of purchasing, logistics, and material management. As part of her management duties, appellant was responsible for "compliance of the operations of Honda with federal laws regarding transportation of materials, equipment, and vehicles and with sound and ethical business practices." In performing her duties, appellant discovered that Honda was shipping hazardous cargo without acknowledging it as such, in violation of federal law. Between June 4 and July 9, 2003, appellant contacted Yamakawa and Allen, and proposed that Honda strictly comply with federal law when shipping hazardous cargo. On July 22, 2003, appellant and Honda Regulatory Compliance Group Leader Mike Myers met with members of Honda management. Appellant wanted to discuss the hazardous materials issue, but management declined. Ultimately, on August 8, 2003, Honda terminated appellant's employment.
 {¶ 3} In making the above allegations, appellant asserted that appellees violated R.C. 4113.52, Ohio's whistleblower statute, and Ohio public policy, when they terminated her for raising the hazardous transportation issue. Likewise, appellant contended that appellees terminated her employment in violation of Ohio's gender discrimination laws, and appellant asserted that appellees failed to pay compensation owed to her.
 {¶ 4} In the course of the litigation, appellant sought discovery on "any inquiries presented to the [Honda] ethics committee or any member from January 1, 1998 to the present." Likewise, appellant included on her witness list her husband, Doug Perin. Doug Perin works for Honda as in-house counsel and is a member of Honda's ethics committee.
 {¶ 5} Honda subpoenaed Doug Perin for a deposition, and the deposition occurred on December 9, 2004. Honda's in-house counsel, Kimberly Udovic, was present at the deposition. Nonetheless, Kelm indicated that he was representing Doug Perin "for purposes of this deposition." Doug Perin likewise acknowledged that Kelm was representing him at the deposition.
 {¶ 6} At the beginning of the deposition, Kelm stated that Doug Perin would assert, when applicable, a spousal privilege and, on behalf of Honda, an attorney-client privilege. However, Kelm stated that, if Honda provided a written waiver, Doug Perin would not invoke the attorney-client privilege on behalf of Honda. In response, appellees' litigation counsel stated that he believed Kelm had a conflict of interest "in advising [Doug] Perin as to what his obligations to the company are, and if you are indicating that you represent [Doug] Perin in that regard, then I believe that you are subject to procedural disqualification because of a conflict of interest." Udovic noted, however, that Honda wanted Doug Perin to protect Honda's attorney-client privilege. As a result, Doug Perin asserted the spousal privilege and Honda's attorney-client privilege during portions of the deposition.
 {¶ 7} During the deposition, Doug Perin testified as follows. Before retaining Kelm for purposes of the deposition, Doug Perin had met with Kelm "[m]ore than once" "regarding [appellant's] claims[.]" Appellant was present at these meetings. Furthermore, Doug Perin had reviewed appellant's complaint, and Doug Perin may have spoken with Kelm's co-counsel, Dawson, about appellant's claims. Moreover, Doug Perin met with Kelm twice for purposes of the deposition. Dawson was present at the meetings.
 {¶ 8} Doug Perin also stated the following during the deposition. Appellant wrote an e-mail to Yamakawa mentioning "ethical liabilities" concerning the hazardous transportation issue that appellant discovered. Doug Perin, a member of the ethics committee, knew about the hazardous transportation issue and knew that the issue "had been presented to members on the ethics committee and upper level management[.]" In the course of events, Doug Perin spoke with Myers about the hazardous transportation issue, and Myers indicated to Doug Perin that Allen or Yamakawa refused to address the issue. Similarly, Doug Perin may have spoken with Allen and Hasegawa about the hazardous transportation issue.
 {¶ 9} In regards to Honda transporting hazardous materials, Doug Perin provided legal advice "[i]n the broad sense of giving legal advice * * * as to how to handle the specific situation." (Depo. at 69.) Lastly, Doug Perin provided the following testimony:
[Appellees' litigation attorney:] * * * [D]o you have any information that you believe might support a claim that your wife was retaliated against by the company?
[Doug Perin:] Possibly, yes.
* * *
[Appellees' litigation attorney:] What information is that?
[Doug Perin:] The fact that she was terminated shortly after presenting information to the company relating to these [hazardous material transportation] issues.
(Depo. at 176.)
 {¶ 10} After the deposition, on December 30, 2004, Doug Perin submitted an "errata sheet" wherein Doug Perin clarified that he retained Kelm in May 2004:
* * * [I]n regard to a phone call that I received from OSHA. The OSHA representative indicated that he was calling about a complaint that was filed in my name against Honda * * *. I did not make or file any such complaint and I sought Mr. Kelm's counsel in how to respond to this phone call. Ms. Dawson advised me to report the matter in writing to Charles Allen, chairman of the ethics committee, Jack Spurney * * * and Fumitaka Hasegawa, * * * which I did.
 {¶ 11} On February 18, 2005, appellees filed a motion to disqualify Kelm and Dawson from representing appellant. The trial court granted the motion and ordered appellant to secure new counsel. The trial court concluded that Kelm and Dawson did not violate any Code of Professional Responsibility disciplinary rules, but concluded that disqualification was warranted because appellant and Doug Perin, being spouses, "share a motive to disregard Honda's attorney-client privilege." The trial court further stated that, "[b]ecause [appellant] and [Doug] Perin's own privileges hide their conduct, Honda has little ability to verify that its privilege is being honored, and is thus largely prevented from enforcement of its own privilege." Thus, according to the trial court, Kelm and Dawson's representation of appellant and Doug Perin "is unfair and unworkable."
 {¶ 12} Appellant appeals, raising one assignment of error:
THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL.
 {¶ 13} In her single assignment of error, appellant contends that the trial court erred in disqualifying Kelm and Dawson from her wrongful termination action. We disagree.
 {¶ 14} Initially, we note that a trial court's decision to disqualify an attorney in a civil case constitutes a final appealable order under R.C. 2505.02(B)(4). Youngstown v. Joenub,Inc. (Sept. 28, 2001), Mahoning App. No. 01-CA-01.
 {¶ 15} Furthermore, we recognize that attorney disqualification is a drastic measure that the trial court should undertake only when absolutely necessary. Campbell v.Independent Outlook, Inc., Franklin App. No. 04AP-310,2004-Ohio-6716, at ¶ 8. Ultimately, however, it is within the trial court's discretion to disqualify counsel, and we review such a decision under an abuse of discretion standard. State exrel. Keenan v. Calabrese (1994), 69 Ohio St.3d 176, 180; Smithv. Cleveland Clinic Found., 151 Ohio App.3d 373, 2003-Ohio-286, at ¶ 9; Campbell at ¶ 8. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 16} In challenging the trial court's decision to disqualify Kelm and Dawson, appellant first contends that appellees had no standing to seek the disqualification. "As a general rule, a stranger to an attorney-client relationship lacks standing to complain of a conflict of interest in that relationship." Morgan v. North Coast Cable Co. (1992),63 Ohio St.3d 156, syllabus; cf. Clucas v. Vojtech (1997),119 Ohio App.3d 475, 477-478 (affirming a trial court's sua sponte decision to disqualify an attorney "to eliminate the potential for an ethical violation"). Appellant argues that appellees are "strangers" to the attorney-client relationship that involves appellant, Doug Perin, Kelm and Dawson because Kelm and Dawson do not and have never represented appellees. However, Morgan also left open the ability for a party, not directly involved in the attorney-client relationship in question, to seek disqualification of attorneys who are "privy to information, confidential or otherwise that, if revealed, would have been adverse or detrimental to the complaining party's cause."Morgan at 160; Joenub, Inc. Here, appellees have asserted that, by communicating with and representing Doug Perin, Kelm and Dawson obtained, to appellees' detriment, improper access to Honda's confidential information. In this regard, appellees had standing to seek Kelm and Dawson's disqualification. See Morgan
at 160; Joenub, Inc.
 {¶ 17} A trial court has inherent authority to supervise members of the bar appearing before it, and this necessarily includes the power to disqualify counsel in specific cases. Kalav. Aluminum Smelting Refining Co., Inc. (1998),81 Ohio St.3d 1, 4. Such inherent authority stems from the trial court's power to protect the integrity of its proceedings and to ensure that attorneys are ethically practicing before it. Royal IndemnityCo. v. J.C. Penney Co. (1986), 27 Ohio St.3d 31, 33-34; Clucas
at 477.
 {¶ 18} As to an attorney's ethical responsibilities:
"The Canons of [the Code of Professional Responsibility] are statements of axiomatic norms, expressing in general terms thestandards of professional conduct expected of lawyers in theirrelationships with the public, with the legal system, and withthe legal profession. They embody the general concepts from which the Ethical Considerations and the Disciplinary Rules are derived.
"The Ethical Considerations are aspirational in character and represent the objectives toward which every member of the profession should strive. They constitute a body of principles
upon which the lawyer can rely for guidance in many specific situations.
"The Disciplinary Rules * * * state the minimum level ofconduct below which no lawyer can fall * * *." (Emphasis added.)
State Emp. Relations Bd. v. Cleveland (1995),106 Ohio App.3d 128, 135, quoting the Preface to the Code of ProfessionalResponsibility.
 {¶ 19} A violation of the disciplinary rules, not the ethical considerations, subjects an attorney to discipline. Columbus BarAssn. v. Schlosser (1995), 74 Ohio St.3d 174, 178. Nonetheless, under certain circumstances, a trial court may consider the ethical considerations set forth in the Code of Professional Responsibility when determining whether to disqualify an attorney. Columbus Credit Co. v. Evans (1992),82 Ohio App.3d 798, 804; see, also, Kala at 4-5 (analyzing canons, ethical considerations, and disciplinary rules when reviewing an attorney disqualification).
 {¶ 20} Canon 9 of the Code of Professional Responsibility dictates that "an attorney should avoid even the appearance of impropriety." Kala at 5. Under Ethical Consideration ("E-C") 9-6, an attorney should "strive to avoid not only professional impropriety but also the appearance of impropriety." In Kala,
the Ohio Supreme Court concluded that an appellate court did not err by disqualifying a law firm in an appellate proceeding due to the appearance of impropriety that stemmed from the law firm's representation. Id. at 14. The law firm represented a defendant in a wrongful termination action and, after appellate proceedings commenced, the law firm employed the attorney that had been representing the plaintiff. Id. at 2. Thus, the plaintiff's attorney ceased to represent the plaintiff. Id. The Ohio Supreme Court recognized that the plaintiff's former attorney possessed the plaintiff's confidences and secrets, and the court imposed a presumption that the former attorney revealed the confidences and secrets to the law firm given that the former attorney and the law firm had been involved in the wrongful termination litigation. Id. at 13.
 {¶ 21} The Ohio Supreme Court then concluded that, despite the law firm's claims that it took steps to ensure that the plaintiff's former attorney did not reveal confidences and secrets to the law firm, "[t]he appearance of impropriety is so strong that nothing that [the law firm] could have done would have had any effect on [the plaintiff's] perception that his personal attorney had abandoned him with all of his shared confidences[.]" Id. at 14. The Ohio Supreme Court further stated that "[n]o steps of any kind could possibly replace the trust and confidence that [the plaintiff] had in his attorney or in the legal system" if the appellate court had allowed the law firm to continue to represent the defendant. Id.
 {¶ 22} Although appellant's case does not involve an attorney accepting employment with opposing counsel, Kala speaks to the appearance of impropriety that stemmed from Kelm and Dawson representing and communicating with Doug Perin, an attorney for Honda, while Kelm and Dawson also represented appellant in a wrongful termination action against Honda. As noted below, as inKala, the appearance of impropriety culminated from concerns that Doug Perin revealed to Kelm and Dawson Honda's confidences and secrets while Kelm and Dawson represented appellant in the case against Honda, and concerns that Honda experienced a breach of loyalty in this litigation due to Kelm and Dawson representing and communicating with both Doug Perin and appellant.
 {¶ 23} First, we recognize that Canon 4 of the Ohio Code of Professional Responsibility generally imposes a duty on Doug Perin to protect Honda's confidences and secrets related to appellant's wrongful termination claim, which includes the hazardous transportation issue that appellant alleged led, in part, to her wrongful termination. See, also, State ex rel.Leslie v. Ohio Hous. Fin. Agency, 105 Ohio St.3d 261,2005-Ohio-1508, at ¶ 22 (recognizing that the attorney-client privilege protects communications between in-house counsel and their corporate clients). A confidence refers to "information protected by the attorney-client privilege" and a secret refers to "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." DR 4-101(A); Kala at 4. Here, Doug Perin necessarily obtained Honda's confidences and secrets by serving on the ethics committee, a committee familiar with appellant's hazardous materials transportation issue. Likewise, Doug Perin had other occasions to obtain pertinent confidences and secrets. Doug Perin had "some conversations" with Myers about hazardous materials transportation issues, and Myers told Doug Perin that Allen or Yamakawa refused to address issues related to hazardous materials transportation. Doug Perin also may have had conversations with Hasegawa and Allen about the hazardous materials transportation issue. And, in regards to Honda transporting hazardous materials, Doug Perin provided legal advice "[i]n the broad sense of giving legal advice * * * as to how to handle the specific situation."
 {¶ 24} Thus, here, as in Kala, Kelm and Dawson's disqualification is warranted through the underlying appearance of impropriety stemming from concerns that Kelm and Dawson had access to Honda's confidences and secrets by representing and communicating with Doug Perin. See Kala at 14 (upholding disqualification upon concluding that "[t]he appearance of impropriety is so strong that nothing that [the disqualified attorneys] could have done would have had any effect on [the plaintiff's] perception that his personal attorney had abandoned him with all of his shared confidences[.]") In so concluding, we emphasize that Honda's concerns about Doug Perin revealing Honda's confidences and secrets are not unwarranted in light of Doug Perin informing Dawson, on another matter, that OSHA received a complaint about Honda. Likewise, we find significant Honda's concerns on confidences and secrets given that appellant sought discovery on inquiries to Honda's ethics committee, and Doug Perin serves on the ethics committee.
 {¶ 25} Appellant states, without evidentiary support, that Doug Perin did not reveal to Kelm and Dawson any pertinent confidences and secrets. However, Honda is unable to unequivocally ascertain as such given that Doug Perin himself has a competing attorney-client privilege with Kelm and Dawson. SeeJoenub, Inc. at ¶ 47 (recognizing that the attorney-client privilege protects communications between a client and his or her attorney). Thus, in addition to our above discussion, we note that, because Honda is unable to unequivocally ascertain that Doug Perin did not reveal pertinent confidences and secrets, we must resolve such doubts "in favor of disqualification in order to dispel any appearance of impropriety." Kala at 11, citingLaSalle Natl. Bank v. Lake Cty. (C.A.7, 1983), 703 F.2d 252,257; Winblad v. Deskins, 150 Ohio App.3d 527, 2002-Ohio-7092, at ¶ 14. We conclude as such to "dispel any reasonable doubts that [Honda] might have that [its] confidences * * * might be compromised." Winblad at ¶ 14.
 {¶ 26} Next, we recognize that Doug Perin, as in-house counsel for Honda, owes Honda a duty of loyalty under Canon 5 of the Ohio Code of Professional Responsibility. State v. Lentz
(1994), 70 Ohio St.3d 527, 530; see, also, EC 5-1 (noting that an attorney should act "for the benefit of his [or her] client[.]") However, as in Kala, Kelm and Dawson's representation of both Doug Perin and appellant created an appearance of impropriety that Doug Perin aligned with appellant's attorneys and abandoned Honda. See Kala at 14. As an example, Doug Perin reviewed appellant's complaint, and Doug Perin even testified that he believed that Honda retaliated against appellant, noting that "she was terminated shortly after presenting information to the company relating to these [hazardous material transportation] issues." (Depo. at 176.)
 {¶ 27} In light of the above appearance of impropriety stemming from the breach of loyalty concern, we further conclude that Kelm and Dawson's disqualification is warranted to ensure that Honda maintains trust and confidence in the litigation that appellant initiated. See Kala at 14.
 {¶ 28} In so concluding, we reject appellant's contention that a trial court cannot base attorney disqualification on an appearance of impropriety. In support of such a contention, appellant relies on Mansfield Plumbing Prods. LLC v. Franze,
Ashland App. No. 04COA012, 2004-Ohio-4765. In MansfieldPlumbing, the Fifth District Court of Appeals concluded that the trial court erred when it disqualified attorneys to avoid the appearance of impropriety. Id. at ¶ 10. In so concluding, the appellate court did not preclude a trial court from ever disqualifying attorneys based on an appearance of impropriety, and such a preclusion would contravene Kala. Rather, the appellate court found that the circumstances in question did not warrant attorney disqualification. Id. at ¶ 10. Likewise, the appellate court had concerns with the evidence that the trial court relied upon to disqualify the attorneys. Id. at ¶ 19.
 {¶ 29} We further reject appellant's argument that disqualification is not warranted because of the resulting prejudice to appellant in having to find a new attorney after Kelm and Dawson commenced substantial discovery and started deposing defendants and witnesses. Although there will be some inconvenience and expense to appellant in having to seek new counsel to represent her in this litigation, the above noted appearance of impropriety that would otherwise continue outweighs appellant's asserted inconvenience and additional expense. SeeWinblad at ¶ 15. Indeed, we recognize that, in Kala, the Ohio Supreme Court found disqualification warranted even though the parties had been through a trial and commenced appellate proceedings. Kala at 2, 14.
 {¶ 30} Likewise, we reject appellant's contention that appellees waived the disqualification issue by not filing for disqualification until approximately two months after the December 2004 deposition, the time wherein appellees first learned that Kelm and Dawson were representing Doug Perin. We previously recognized that an attorney waives an attorney-disqualification issue by failing to timely object to the representation in question. Campbell at ¶ 16. "Timeliness is not a fixed concept, but generally courts have held that the proper time within which to raise an objection is soon after the onset of litigation, * * * or at least within a reasonable time once the facts are known." Sarbey v. Natl. City Bank Akron
(1990), 66 Ohio App.3d 18, 28. Here, we find nothing unreasonable about the time frame in which appellees sought the disqualification, given that appellees filed the motion approximately seven weeks after Doug Perin disclosed in the errata sheet that he spoke with Dawson about the OSHA complaint, and given that, at Doug Perin's deposition, appellees' litigation attorney put Kelm and Dawson on notice about the disqualification issue. Thus, we conclude that appellees did not waive the disqualification issue.
 {¶ 31} Accordingly, we conclude that the trial court did not abuse its discretion when it disqualified Kelm and Dawson from representing appellant. As such, we overrule appellant's single assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Klatt and Sadler, JJ., concur.