OPINION
{¶ 1} Plaintiffs-appellants, Michael Karaman and Invesco, Ltd., appeal the decision of the Montgomery County Court of Common Pleas disqualifying their trial counsel, Steven K. Dankof, from representing them in a legal malpractice action. For the reasons set forth below, we affirm the trial court's judgment.
 {¶ 2} Appellants commenced the present action against their former counsel, *Page 2 
appellees, Pickrel, Schaeffer Ebeling ("PSE") and PSE attorney, Alan Schaeffer, on May 31, 2002. Such action is based upon appellees' alleged failure to disclose a conflict of interest. According to appellants, appellees represented Karaman for several years with respect to various legal matters, including the formation of a real estate investment company, Invesco, in 1997. Karaman and his business associate, Krishan Chari, were designated the sole members of Invesco. Appellants allege that appellees also represented Chari for a number of years prior to the formation of Invesco, and continued to provide legal counsel to all three individuals/entities through October 1999.
 {¶ 3} Appellants allege that in the spring of 1999, appellees represented Chari in "an elaborate scheme to borrow approximately $2.5 million from an individual known as Ron Filburn," and knew that Chari subsequently presented a check to Filburn in the sum of $2,566,000 which he had insufficient funds to cover. By reason of such representation, appellants contend appellees knew or should have known of conflicting interests between Karaman, Invesco and Chari "no later than May 17, 1999," and failed to resolve the conflict at that time. Appellants contend they were economically damaged by such failure where they continued to do business with Chari without knowledge of his "financial condition and felonious conduct." Appellees maintain they did not become aware of a conflict until October 14, 1999, and immediately withdrew from representing both Chari and appellants on October 15, 1999.
 {¶ 4} On September 12, 2002, appellants voluntarily dismissed their complaint without prejudice, and refiled the same on September 10, 2003. Appellants filed an amended complaint on March 25, 2004, in response to appellees' November 14, 2003 motion to dismiss. Appellees filed a second motion to dismiss on April 9, 2004, which the trial court denied on July 29, 2005. Shortly thereafter, on August 16, 2005, appellees moved to disqualify Dankof as appellants' attorney based upon an alleged conversation between *Page 3 
Dankof and Schaeffer concerning Schaeffer's resolution of the conflict between his former clients.
 {¶ 5} Specifically, appellees allege that Dankof ran into Schaeffer in the lobby of an office building at some point between October 1999 and January 2000, and during a brief exchange, told Schaeffer that he "may have a problem" and "may have had a duty to disclose." Appellees contend Dankof's statements demonstrate he knew of a potential malpractice claim at that time, and failed to file the instant legal malpractice action within the applicable one-year statute of limitations.
 {¶ 6} Following a lengthy hearing on the matter, the trial court granted appellees' motion to disqualify, finding that Dankof "ought to testify on behalf of" appellants where he is the only person who can refute the alleged conversation. Appellants now appeal Dankof's disqualification, advancing a single assignment of error.[1]
 {¶ 7} Assignment of Error:
 {¶ 8} "THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT DISQUALIFIED TRIAL COUNSEL FOR PLAINTIFFS-APPELLANTS MICHAEL KARAMAN AND INVESCO, LTD."
 {¶ 9} It is well-established that "[a] trial court has the duty and responsibility to supervise the conduct of attorneys who appear before it." 155 N. High, Ltd. v. Cincinnati Ins. Co., 72 Ohio St.3d 423, 426,1995-Ohio-85. A trial court therefore possesses the "inherent authority" to disqualify an attorney from acting as counsel where the attorney "cannot, or will not, comply with the Code of Professional Responsibility when representing a client." Mentor Lagoons, Inc. v.Rubin (1987), 31 Ohio St.3d 256, 259, citing Royal Indemnity Co. v.J.C. *Page 4 Penney Co. (1986), 27 Ohio St.3d 31, 33-34.
 {¶ 10} "Because the roles of advocate and witness are inconsistent, it is generally inappropriate for a trial attorney to testify on behalf of the client." Amos v. Cohen, Hamilton App. No. C-030214, 2004-Ohio-1265, ¶ 7. DR 5-102 governs the withdrawal of an attorney when he or she becomes a witness in a case after having undertaken employment as counsel for the client, [2] and provides:
 {¶ 11} "(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4).
 {¶ 12} "(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."
 {¶ 13} The Ethical Considerations set forth in the Code of Professional Responsibility, which are aspirational in nature, provide the rationale for the advocate-witness rule: "An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively." EC 5-9. EC 5-10 further provides that "[w]here the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as *Page 5 
an advocate."
 {¶ 14} In determining "whether continued representation is appropriate, `the issue is one which concerns the regulation of the practice before the trial court and the protection of the integrity of the proceedings. * * * [A] court cannot knowingly participate in what it perceives to be a breach of an ethical or disciplinary violation.'"Pilot Corp. v. Abel, Franklin App. No. 01AP-1204, 2002-Ohio-2812, ¶ 23, quoting Mentor Lagoons, Inc. v. Teague (1991), 71 Ohio App.3d 719, 725. "These determinations necessarily involve the exercise of substantial discretion on the part of the trial court in connection with a motion for disqualification." Sauer v. Greene (1989), 62 Ohio App.3d 22, 25.
 {¶ 15} Accordingly, a reviewing court will not reverse a trial court's decision concerning disqualification of counsel absent an abuse of discretion. 155 N. High, 72 Ohio St.3d at 426. An abuse of discretion connotes more than an error of law or judgment; it implies the trial court was unreasonable, arbitrary, or unconscionable in its ruling.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Because of the potential use of the advocate-witness rule for abuse, disqualification "`is a drastic measure which should not be imposed unless absolutely necessary.'" Waliszewski v. Caravona Builders, Inc. (1998),127 Ohio App.3d 429, 433, quoting Spivey v. Bender (1991), 77 Ohio App.3d 17, 22. "`A delicate balance must be struck between two competing considerations: the prerogative of a party to proceed with counsel of its choice and the need to uphold ethical conduct in courts of law.'"Spivey, quoting Gould, Inc. v. Mitsui Mining Smelting Co. (N.D.Ohio 1990), 738 F.Supp. 1121, 1126.
 {¶ 16} With respect to DR 5-102(A), the Ohio Supreme Court has found that an attorney "ought to be called as a witness on behalf of his client" where "his testimony is necessary to prove his client's claims."See 155 N. High at 428. "The `necessity' of counsel's testimony `is determined by consideration of factors such as the significance of the matters, the weight of the testimony, and the availability of other evidence.'" Montgomery v. Mann, *Page 6 
Franklin App. No. 06AP-724, 2007-Ohio-44, ¶ 10, quoting United States v.Poulsen (S.D.Ohio Sept. 12, 2006), Case No. CR2-06-129. A party's contention that it does not intend to call its attorney as a witness is not determinative of whether disqualification is necessary, as the "threshold consideration" of whether the attorney "ought to be called as a witness" on his client's behalf is an objective inquiry. SeeLibbey-Owens-Ford Co. v. Martin (Sept. 12, 1996), Franklin App. No. 96APE02-215, 1996 WL 517616, at *5; Quigley v. Telsat, Inc., Summit App. No. 23481, 2007-Ohio-2884, ¶ 6. Moreover, DR 5-102(A) "makes no provision for client waiver of its application." 155 N. High at 427.
 {¶ 17} The Ohio Supreme Court has set forth a two-part analysis for determining whether an attorney can serve as both advocate and witness: (1) "the court must first determine the admissibility of the testimony without reference to the Disciplinary Rules;" and (2) "if the court finds the testimony admissible * * * the court must then consider whether any exceptions to the Disciplinary Rules are applicable." Id. at 427-428; Rubin, 31 Ohio St.3d at 260. The moving party bears the burden of proving disqualification is necessary. Waliszewski,127 Ohio App.3d at 433. The burden of proving whether one of the exceptions applies is upon the attorney seeking to claim the exception. See 155 N. High
at 429-430; Horen v. Toledo Pub. School Dist. Bd. of Edn.,174 Ohio App.3d 317, 2007-Ohio-6883, ¶ 22.
 {¶ 18} In this case, the trial court disqualified Dankof pursuant to DR 5-102(A) on the basis that Dankof "is the only person who can refute" the alleged conversation between himself and Shaeffer. As noted by the trial court, the importance of the alleged conversation is the statute of limitations, and whether appellants' legal malpractice claims are barred where such conversation demonstrated appellants' knowledge of a potential malpractice claim in late 1999 or early 2000.
 {¶ 19} Pursuant to R.C. 2305.11(A), a legal malpractice action "shall be commenced within one year after the cause of action accrued." "An action for legal malpractice accrues *Page 7 
and the statute of limitations begins to run `when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.'"Werts v. Penn, 164 Ohio App.3d 505, 2005-Ohio-6532, ¶ 11, quotingZimmie v. Calfee, Halter Griswold (1989), 43 Ohio St.3d 54, 58. "The party asserting the statute-of-limitations defense has the burden of identifying the date of the cognizable event." Id., citing Case v.Landskroner Phillips Co., L.P.A. (May 3, 2001), Cuyahoga App. No. 78147, 2001 WL 470169. Once a party meets this burden, the burden shifts to the opposing party to demonstrate the statute of limitations defense is invalid. Bell v. Mittleman (Nov. 12, 1998), Cuyahoga App. No. 73350,1998 WL 787391, at *3.
 {¶ 20} Our review of the record demonstrates the trial court acted within its discretion in reaching its conclusion that Dankof "ought to be called as a witness on behalf of his client." First, the trial court found, and the record demonstrates, that Dankof's testimony was admissible and necessary to the presentation of appellants' case. During the hearing on appellees' motion to disqualify, Dankof denied ever having told Schaeffer that he "may have had a duty to disclose," though he acknowledged he may have "bumped into" Scaheffer during the time period in question. He further testified that he did not become aware of a potential malpractice claim against Schaeffer until Karaman was deposed in relation to Chari's bankruptcy case on August 15, 2000. Appellants argue other witnesses, such as Dankof's former co-counsel in this matter and the bankruptcy trustee who deposed Karaman, can testify as to this fact.
 {¶ 21} Schaeffer, however, testified that Dankof was the only person present during the alleged encounter in late 1999 or early 2000, when Dankof told him, "you've got a problem, you might have had a duty to disclose." Schaeffer indicated that such statement instilled in *Page 8 
him "confusion, disbelief, [and] shock," and led him to believe Dankof was "telling [him] that [he] had a potential malpractice problem." Accordingly, appellees contend the statute of limitations for appellants' malpractice claim began to run in late 1999 or early 2000 when the conversation occurred, and that the complaint in this case was not timely filed within one year of such occurrence.
 {¶ 22} While appellants contend they will not call Dankof to testify at trial because Schaeffer's testimony is replete with inconsistencies and is not supported by documentation, [3] the trial court found Dankof is the "only person" who can actually refute the conversation. Indeed, while appellants contend other witnesses are available to testify as to when they became aware of a potential malpractice claim, the record demonstrates that none of these witnesses are alleged to have been present during the subject conversation. Accordingly, while appellants are steadfast that Dankof will not be called to testify on their behalf, we cannot conclude the trial court abused its discretion in determining Dankof "ought to be called as a witness" on appellants' behalf to invalidate appellees' statute of limitations defense.
 {¶ 23} Second, the trial court found, and the record demonstrates, that none of the exceptions set forth in DR 5-101(B) apply to this case. Such exceptions include the following:
 {¶ 24} "(1) If the testimony will relate solely to an uncontested matter.
 {¶ 25} "(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
 {¶ 26} "(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
 {¶ 27} "(4) As to any matter, if refusal would work a substantial hardship on the client *Page 9 
because of the distinctive value of the lawyer or his firm as counsel in the particular case."
 {¶ 28} Neither at the trial level, nor on appeal, have appellants argued that any of these exceptions apply. Moreover, like the trial court, we find no basis in the record to support the application of any such exceptions.
 {¶ 29} While appellants argue Dankof's testimony would not be prejudicial even if Dankof were called to testify on cross-examination, the record demonstrates the trial court disqualified Dankof pursuant to DR 5-102(A) without addressing DR 5-102(B). Ohio courts have previously distinguished DR 5-102(A) and DR 5-102(B) on the basis the former "requires that an attorney shall withdraw," while the latter "incorporates a presumption in favor of continued representation."Waliszewski, 127 Ohio App.3d at 432, citing Teague,71 Ohio App.3d at 724. After reviewing the trial court's decision, it is our impression the court implicitly found DR 5-102(B) inapplicable where Dankof's testimony will be necessary on appellants' behalf to directly refute Schaeffer's allegations. As stated, we find the trial court did not abuse its discretion in finding disqualification warranted pursuant to DR 5-102(A).
 {¶ 30} As a final matter, appellants contend the trial court abused its discretion in granting appellees' motion to disqualify Dankof where such motion was filed after a "delay of nearly 3 and ½ years." Ohio courts have previously found "an attorney waives an attorney-disqualification issue by failing to timely object to the representation in question." Perin v. Spurney, Franklin App. No. 05AP-428, 2005-Ohio-6811, ¶ 30, citing Campbell v. Independent Outlook,Inc., Franklin App. No. 04AP-310, 2004-Ohio-6716, ¶ 16. "Timeliness is not a fixed concept, but generally courts have held that the proper time within which to raise an objection is soon after the onset of litigation, * * * or at least within a reasonable time once the facts are known.'" Id., quoting Sarbey v. Natl. City Bank, Akron (1990),66 Ohio App.3d 18, 28.
 {¶ 31} Here, the record demonstrates appellants were represented by counsel other than Dankof at the time the action was originally filed in May 2002. Following appellees' filing *Page 10 
of a motion to dismiss, appellants dismissed the action without prejudice in September 2002. The record demonstrates that Dankof was appellants' counsel of record when the action was re-filed in September 2003. Appellees subsequently moved to dismiss in November 2003, after which appellants filed an amended complaint. Appellees filed a second motion to dismiss in April 2004, which the trial court denied in July 2005. The record demonstrates that appellees sought to disqualify Dankof in August 2005, less than one month after the trial court's decision denying their motion to dismiss. Considering such procedural history, we are not persuaded the trial court abused its discretion in disqualifying Dankof at this stage of the litigation. See Amos, 2004-Ohio-1265
at ¶ 12.
 {¶ 32} Based upon the foregoing, we find the trial court did not err in disqualifying Dankof, and overrule appellants' assignment of error accordingly.
 {¶ 33} Judgment affirmed.
YOUNG, P.J. and VALEN, V.J., concur.
Young, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.
Powell, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.
Valen, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.
[1] Appellants' merit brief includes several sub-arguments in support of their contention the trial court abused its discretion in disqualifying Dankof. All such arguments have been considered and are addressed in our analysis of appellants' sole assignment of error.
[2] The Rules of Professional Conduct, effective February 1, 2007, have since superseded the Code of Professional Responsibility.
[3] Schaeffer testified by way of affidavit, and during the disqualification hearing, that the alleged conversation occurred one to two months before appellants had even hired Dankof as counsel. While Schaeffer later stated the conversation could have occurred in December or January, rather than in October or November as originally alleged, he admitted having no documentation such meeting occurred, and that he did not notify his malpractice carrier following such conversation. *Page 1