[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 423.]

155 NORTH HIGH, LIMITED., APPELLANT, *v.* CINCINNATI INSURANCE

COMPANY, APPELLEE.

[Cite as *155 N. High, Ltd. v. Cincinnati Ins. Co*., 1995-Ohio-85.]

*Attorneys at law—DR 5-101(B)(4) is an exception to the general rule of DR 5-102(A) that an attorney cannot serve as both an advocate and witness—Attorney has burden to prove his services provide a distinctive value and that his disqualification would work a substantial hardship on his client.*

DR 5-101(B)(4) is an exception to the general rule of DR 5-102(A) that an attorney cannot serve as both an advocate and witness. The attorney who intends to invoke this exception has the burden to prove that his or her services provide a distinctive value and that his or her disqualification would work a substantial hardship on his or her client. Neither familiarity with the case nor mere added expenses are sufficient to prove this exception. Once the trial court makes its independent determination as to whether the exception applies, the ruling must stand unless the trial court abused its discretion.

(No. 93-2371—Submitted March 22, 1995—Decided July 5, 1995.)

APPEAL from the Court of Appeals for Franklin County, No. 93AP-45.

———————————

{¶ 1} 155 North High, Limited ("155 North High"), appellant, and the Cincinnati Insurance Company ("Cincinnati"), appellee, were parties to an insurance contract. This commercial policy, covering the years 1984 to 1987, provided property loss coverage and contained a special endorsement for rental value insurance. On July 25, 1987, a fire totally destroyed the building insured under the policy. Because of the suspicious nature of the fire, 155 North High's general partner, Charles J. Ruma, immediately called his attorney, James M. Wiles

("Wiles").[1] Within days of the fire, Wiles was in contact with Stephen Schwartz, the claims adjuster for Cincinnati. Wiles continued to deal with Schwartz up to the filing of the complaint.

{¶ 2} In December 1987, Cincinnati paid 155 North High $1,030,000, the full policy amount for property loss coverage. Also, by this date, Cincinnati had disbursed approximately $92,000 for the rental value insurance. However, the parties continued to dispute the amount still owing, if any, for this coverage.

{¶ 3} In December 1988, 155 North High filed suit against Cincinnati alleging, *inter alia*, a bad-faith breach of the insurance contract because of Cincinnati's alleged delay and intentional mishandling of the insurance claims. After filing an answer, Cincinnati moved for summary judgment. In May 1989, 155 North High submitted a memorandum contra the summary judgment motion and attached Wiles's affidavit to support its claim that the insurance company breached its duty of good-faith claims handling. The trial court denied the summary judgment motion.

{¶ 4} In May and June 1989, Wiles took the depositions of Schwartz and Michael J. Gagnon, Schwartz's superior from home office. Schwartz's deposition was replete with lack of knowledge, memory, recall, and certainty of answers. After these depositions, Wiles listed himself as a potential witness in the case.

{¶ 5} Trial before a common pleas court referee began on August 28, 1989. On the first morning of trial, counsel for Cincinnati advised the referee that Wiles had implied that he might testify on behalf of his client. Wiles responded by stating that he could not answer definitively until he heard the testimony of Cincinnati's witnesses (Schwartz and Gagnon). However, he assured the referee that he had

---

1. Although arson was suspected from the beginning, 155 North High was cleared of any wrongdoing early in the investigation.

considered the Disciplinary Rules and did not feel there would be any violations if he testified.

{¶ 6} Wiles served as lead trial counsel. In addition to conducting the direct examination of many of the witnesses, Wiles conducted the cross-examination of four of the witnesses, which included Schwartz and Gagnon. He cross-examined the men about contacts and conversations he had had with them, beginning shortly after the fire up to the time the lawsuit was filed. At the close of the fourth day of trial, Wiles announced his intention to testify the following day.

{¶ 7} When Wiles took the stand, counsel for Cincinnati objected to Wiles's serving as both trial counsel and witness. In responding to the objection, Wiles again assured the referee that the matter had been fully considered. The referee deferred to Wiles's judgment, and overruled the objection.

{¶ 8} Wiles then testified at length regarding his many conversations and contacts with Cincinnati claims adjuster, Schwartz. Unlike Schwartz, who had testified he could not recall many things that were said and done on the claims, Wiles was able to testify in great detail about what Schwartz had said and what Cincinnati had done.

{¶ 9} After testifying, Wiles stepped down, called 155 North High's final witness to the stand, conducted direct examination, and then rested. Cincinnati presented three witnesses in its case-in-chief. Wiles conducted the cross-examination of each.

{¶ 10} The referee found in favor of 155 North High and issued a report and recommendation that 155 North High be awarded $25,000 in compensatory damages and $100,000 in punitive damages. Without reviewing the transcript, the trial court adopted the referee's report and recommendation, and entered judgment for 155 North High.

{¶ 11} Upon appeal, the court of appeals affirmed in part and reversed in part, and remanded two issues: (1) whether the referee erred by permitting Wiles to

testify; and (2) whether the record supported the referee's finding that Cincinnati breached its duty of good-faith claims handling.

{¶ 12} Upon remand, the trial court reviewed the record, adopted the referee's report and recommendation, and again entered judgment in 155 North High's favor.

{¶ 13} Cincinnati appealed for the second time. This time, the court of appeals found that the trial court committed prejudicial error in allowing Wiles to testify as a witness on behalf of his client. The court awarded a new trial to Cincinnati.

{¶ 14} The cause is now before this court pursuant to the allowance of a motion to certify the record.

_____

*Wiles, Doucher, Van Buren & Boyle Co., L.P.A., James J. Brudny, Jr.* and *James M. Wiles; Baker & Hostetler* and *Bradley Hummel*, for appellant.

*Lane, Alton & Horst, Gregory D. Rankin* and *Karen Krisher Rosenberg*, for appellee.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 15} A trial court has the duty and responsibility to supervise the conduct of attorneys who appear before it and its rulings will be upheld unless the court abused its discretion. *Royal Indemn. Co. v. J.C.Penney Co.* (1986), 27 Ohio St.3d 31, 27 OBR 447, 501 N.E.2d 617; *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 31 OBR 497, 510 N.E.2d 379. Thus, our inquiry in this case is whether the trial court abused its discretion by allowing 155 North High's attorney to serve as both an advocate and witness at trial.[2] For the following reasons, we find an abuse of discretion and, accordingly, affirm the court of appeals.

_____

2. This case does not deal with the issue of an attorney's testimony against his or her client (DR 5-102[B]). Courts will closely scrutinize this situation because an adverse party may try to call an

{¶ 16} At first blush, our job appears more difficult because the referee deferred to the judgment of the attorney and completely abdicated his responsibility to make an independent determination as to whether the Disciplinary Rules were violated. Moreover, without consideration of the record, the trial court then adopted the referee's report and recommendation. However, on remand, a different trial court reviewed the record and made an independent determination that the Disciplinary Rules were not violated. It is this ruling that we now review subject to the abuse-of-discretion standard.

{¶ 17} The Code of Professional Responsibility sets forth the legal standards relating to the practice of law. The Code is comprised of three parts: Canons, Ethical Considerations, and Disciplinary Rules. The Canons are "statements of axiomatic norms, expressing in general terms the standards of professional conduct expected of lawyers in their relationships with the public, with the legal system, and with the legal profession." Preface. The Ethical Considerations "are aspirational in character and represent the objectives toward which every member of the profession should strive." *Id.* The Disciplinary Rules, however, are "mandatory in character," because they "state the minimum level of conduct below which no lawyer can fall." *Id.*

{¶ 18} Within this framework, Canon 5 provides that, "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client." In part, this Canon is enforced by DR 5-102(A), which states the general rule that "[i]f *** a lawyer learns or it is obvious that he *** ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and *** shall not continue the representation in the trial, except that he may continue the representation and he *** may testify in the circumstances enumerated in DR 5-

---

opposing lawyer as a witness simply to disqualify that lawyer, thus creating an unfair tactical advantage, or to harass opposing counsel. Sargent Cty. Bank v. Wentworth (N.D. 1993), 500 N.W.2d 862.

101(B)(1) through (4)." EC 5-9 provides the rationale for the witness-advocate rule: "*** The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively." EC 5-10 also declares that "[w]here the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate."

{¶ 19} DR 5-102(A), unlike other rules[3] in the Code of Professional Responsibility, makes no provision for client waiver of its application. This is so because the rule against a lawyer serving in the dual role of witness and advocate is designed to protect three distinct interests: those of the client, those of the adverse party, and that of ensuring the institutional integrity of the legal system as a whole. See 6 Wigmore on Evidence (Chadbourn Rev.Ed.1976), Section 19; *United States v. Johnston* (C.A. 7, 1982), 690 F.2d 638, 643. As eloquently stated by the court in *GAC Commercial Corp. v. Mahoney Typographers, Inc.* (1976), 66 Mich. App. 186, 191, 238 N.W.2d 575, 577: "As members of a profession in which public reliance and trust is so essential and whose members' integrity must be assured to maintain vital public respect, we as attorneys must recognize the importance of a high standard by which our conduct is measured. Even where there is no thought of or an intent to do wrong, if our conduct appears to be unethical, we weaken that respect and trust just as surely as if we had purposely violated a specific rule."

{¶ 20} Courts have uniformly shared the legal profession's disapproval of the dual role of advocate-witness. See *United States v. Birdman* (C.A. 3, 1979), 602 F.2d 547, 553, and cases cited therein. See, also, Annotation (1985), 35 A.L.R.4th 810.

{¶ 21} In Ohio, the only Supreme Court case to discuss these Disciplinary Rules has been *Mentor Lagoons, Inc. v. Rubin, supra*. However, in *Mentor*

---

3. E.g., DR 5-101(A).

*Lagoons*, the issue before us was whether a lawyer was incompetent as a witness. In deciding that DR 5-102 does not automatically render a lawyer incompetent, we set forth a procedure for the court to follow in reaching its determination as to whether a lawyer can serve as both an advocate and a witness: the court must first determine the admissibility of his testimony without reference to the Disciplinary Rules; if the court finds the testimony admissible, the party or court may move for the attorney to withdraw or be disqualified and the court must then consider whether any exceptions to the Disciplinary Rules are applicable, thus permitting the attorney to testify and continue representation. *Id.* at paragraph two of the syllabus.

{¶ 22} Applying this procedure to the instant case, we find it obvious not only that Wiles's testimony was admissible, but also that it was clear that he "ought to be called as a witness on behalf of his client." Wiles had personal knowledge regarding the alleged acts of bad-faith claims handling. He was an active participant in dealings and negotiations beginning shortly after the fire and continuing up to the time the lawsuit was filed. He testified to conversations and actions taken by the insurance company. Thus, his testimony was necessary to prove his client's claims. Moreover, this was not a sudden development. Wiles had known early on that he was a key witness. This fact is attested to in his affidavit which was attached to appellant's memorandum contra Cincinnati's motion for summary judgment. Additionally, the situation became glaringly obvious after Cincinnati's company representatives were deposed, and Wiles knew that these representatives, especially Schwartz, could not recall several key events and discussions. By testifying at trial, the lawyer was able to fill in gaps created by Schwartz's lack of recall of these events and discussions. Moreover, Wiles directly contradicted other facts as testified to by the insurance representatives.

{¶ 23} But this does not end our inquiry. Having found Wiles's testimony admissible, we must decide whether any of the exceptions contained within DR 5-101(B) would permit his testimony.

{¶ 24} Appellant argues that DR 5-101(B)(4)[4] applies. This exception provides that a lawyer may testify "[a]s to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer *** as counsel in the particular case." At trial, Wiles failed to make any argument as to why this exception applied. However, the referee apparently found that the exception applied because Wiles had been involved in a meaningful way throughout the development of the case, and disqualification of Wiles would have worked a substantial hardship on 155 North High.

{¶ 25} DR 5-101(B)(4) requires a showing of two elements: distinctive value resulting in substantial hardship. While *Mentor Lagoons* mentioned this exception in a footnote, it did not define it. Thus, we consider cases from our appellate courts and those from other jurisdictions.

{¶ 26} In a case strikingly similar to ours, involving an insurer's breach of good faith and fair dealing in failing to pay a claim, a Texas appellate court found that DR 5-101(B)(4)[5] was inapplicable and held that the trial court abused its discretion in failing to disqualify the trial attorney who also testified as a material witness against the insurer. The Texas court noted that: "This exception generally contemplates an attorney who has some expertise in a specialized area of law such as patents, and the burden is on the attorney seeking to continue representation to prove distinctiveness." *Warrilow v. Norrell* (Tex.App. 1989), 791 S.W.2d 515, 520, citing *Supreme Beef Processors, Inc. v. American Consumer Indus., Inc.* (N.D.Tex. 1977), 441 F.Supp. 1064, 1068-1069. Since the case was relatively

---

4. The first three exceptions concern uncontested testimony, formalities, and legal fees, and have no application to this matter.

5. The Texas version of DR 5-101(B)(4) is identical to ours.

straightforward and did not involve complex matters, the Texas court found that the case did not require the sort of expertise envisioned by DR 5-101(B)(4).[6]

{¶ 27} In *Mentor Lagoons, Inc. v. Teague* (1991), 71 Ohio App.3d 719, 595 N.E.2d 392, the Eighth District Court of Appeals also required a showing of specialized knowledge in establishing the attorney's distinctive value. The appellate court rejected the notions that intimate familiarity with the case or mere increased expenses met this standard. See, also, *Schaub v. Mentor Lagoons Marina* (May 25, 1990), Lake App. No. 89-L-14-054, unreported, affirmed (1991), 60 Ohio St.3d 68, 573 N.E.2d 69; *In the Matter of Richardson v. Board of Revision of Cuyahoga Cty.* (Mar. 15, 1979), Cuyahoga App. Nos. 38566, 38567, 38569, 38570, unreported.

{¶ 28} We agree with the reasoning employed by these courts. We recognize, of course, the importance of a party's right to be represented by his or her chosen counsel, and we are not unmindful of the inconvenience that may be visited upon that party by reason of counsel's disqualification. However, "distinctive value resulting in substantial hardship" requires more than a showing of mere financial hardship or long time familiarity with the case. These must be some proof of specialized expertise. Placing the burden of proof upon the attorney seeking the exception is appropriate, as the attorney is in the best position to show why his or her services provide a distinctive value and that the disqualification would result in a substantial hardship to the client. Moreover, once an objection has been entered or a motion made, a trial court must make an independent determination as to whether the exception applies. Once such a ruling has been entered, it can be reversed only if the court abused its discretion.

{¶ 29} Accordingly, we hold: DR 5-101(B)(4)is an exception to the general rule of DR 5-102(A) that an attorney cannot serve as both an advocate and witness. The attorney who intends to invoke this exception has the burden to prove that his

---

6. Although finding an abuse of discretion, the Texas court did not reverse on this issue.

or her services provide a distinctive value and that his or her disqualification would work a substantial hardship on his or her client. Neither familiarity with the case nor mere added expenses are sufficient to prove this exception.

**{¶ 30}** Applying our holding to the present case, we find that Wiles's testimony was necessary to 155 North High's assertion that Cincinnati breached its duty to its insured to act in good faith. Wiles, the principal contact and negotiator for 155 North High, knew or ought to have realized his importance as a witness in the case. Moreover, Wiles knew or should have known this well in advance of trial. Additionally, Wiles did nothing to prove that he had expertise in a specialized area of law. In fact, this civil action was neither particularly complex nor involved. Thus, we find the general prohibition applies, and it is mandatory: a lawyer cannot be both advocate and witness. The trial court abused its discretion in not disqualifying Wiles from representing 155 North High.

**{¶ 31}** The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, PFEIFER and COOK, JJ., concur.

———————————