[Cite as *Gisslen v. Gisslen*, 2011-Ohio-3105.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| THOMAS A. GISSLEN | : | |
| | : | Appellate Case No. 24414 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 07-LS-25 |
| v. | : | |
| | : | |
| KAREN M. GISSLEN | : | (Civil Appeal from Common |
| | : | Pleas Court, Domestic Relations) |
| Defendant-Appellee | : | |
| | : | |

· · · · · · · · · · ·

## O P I N I O N

Rendered on the 24th day of June, 2011.

· · · · · · · · · · ·

THOMAS G. EAGLE, Atty. Reg. #0034492, Thomas G. Eagle Co., LPA, 3386 North State Route 123, Lebanon, Ohio 45036
        Attorney for Plaintiff-Appellant

DAVID P. WILLIAMSON, Atty. Reg. #0032614, Bieser, Greer & Landis, LLP, 400 PNC Center, 6 North Main Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellee

· · · · · · · · · · · · ·

FAIN, J.

{¶ 1} Plaintiff-appellant Thomas Gisslen appeals from a judgment and decree of divorce. Mr. Gisslen contends that the trial court abused its discretion by denying him parenting time. He further contends that the trial court abused its discretion by denying his

motion to disqualify counsel for Mrs. Gisslen, and by failing to divide $10,000 in marital funds.

**{¶ 2}** We conclude that the trial court did not abuse its discretion in suspending Mr. Gisslen's parenting time, because there is evidence in the record to support the trial court's conclusion that the manner in which he was exercising his parenting time was detrimental to the interests of the children. We further conclude that the trial court did not abuse its discretion by denying Mr. Gisslen's motion to disqualify counsel, without a hearing. Finally, the record shows that all marital assets were properly divided.

**{¶ 3}** Accordingly, the judgment of the trial court is Affirmed.

I

**{¶ 4}** The parties were married on December 24, 2003. They have two minor children. In 2007, Mr. Gisslen filed a Complaint for Legal Separation. Thereafter, Mrs. Gisslen filed an Answer and Counterclaim for Divorce.

**{¶ 5}** The matter was set for trial several times, but was continued due to scheduling conflicts. Trial began before the trial court on August 7, 2009 and continued on August 28, 2009. The trial was then set to continue on March 1, 2010. However, on February 23, 2010, less than a week before the next day of trial was scheduled, Mr. Gisslen filed an Affidavit of Disqualification with the Supreme Court of Ohio seeking to disqualify the trial judge. On February 26, 2010, Mr. Gisslen's fifth attorney filed a motion to withdraw, at which time, Mr. Gisslen began representing himself. Due to the filing of the Affidavit of Disqualification, the trial court reset the March 1 hearing date.

{¶ 6}   The Supreme Court of Ohio rejected the Affidavit of Disqualification, and Mr. Gisslen filed a second Affidavit on March 5, 2010.   That was also rejected.

{¶ 7}   The case was set for the next day of trial on April 29.  Mr. Gisslen filed a motion for continuance on April 27, citing the death of his father on April 21.   The motion was granted, and the hearing was again re-set, for September 14, 2010.

{¶ 8}   On September 13, 2010, the day before the resumption of the trial, Mr. Gisslen filed a motion to disqualify Mrs. Gisslen's counsel.   In his motion to disqualify, Mr. Gisslen alleges that, prior to initiating the Complaint for Separation, he had personally consulted with Patrick Flanagan of Flanagan, Lieberman, Hoffman and Swaim (the Flanagan firm) regarding the case and that he "divulged, disclosed and communicated confidential and privileged information with full assurance and expectation of protection through attorney client privilege."[1]   Mr. Gisslen claims that Mrs. Gisslen then hired attorney Wayne Stephan as her counsel while Mr. Stephan was an associate with the Flanagan firm.   At some point early in this litigation, Stephan left the Flanagan firm.   Mr. Gisslen contends that he did not become aware of the connection until such time as he began self-representation.

{¶ 9}   The final hearing date was held on September 14, 2010 at which time the trial court overruled the motion to disqualify counsel on the basis that the motion was untimely. Mr. Gisslen then stated that he could not "continue on with this hearing."   As he left the courtroom, he stated, "[h]ave a nice hearing.   See you."   The hearing proceeded in Mr. Gisslen's absence.

---

[1]   After consulting Flanagan, Mr. Gisslen hired James Kirkland to initiate the separation complaint.   He later hired and fired four more attorneys before beginning to represent himself.

{¶ 10} Of relevance to this appeal, the trial court awarded custody of the children to Mrs. Gisslen and suspended Mr. Gisslen's parenting time. The trial court also found that the parties did not have any joint accounts and awarded "each party * * * any * * * accounts held in his or her own name."

{¶ 11} Mr. Gisslen appeals.

II

{¶ 12} Mr. Gisslen's First Assignment of Error states as follows:

{¶ 13} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISQUALIFY OPPOSING COUNSEL."

{¶ 14} Mr. Gisslen contends that the trial court should have held a hearing on, and should have granted, his motion to disqualify counsel for Mrs. Gisslen.

{¶ 15} This court utilizes the abuse of discretion standard when reviewing a trial court's decision regarding disqualification of a party's counsel. *Carr v. Acacia Country Club,* Cuyahoga App. No. 91292, 2009-Ohio-628. An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶ 16} "It is well-established that '[a] trial court has the duty and responsibility to supervise the conduct of attorneys who appear before it'." *Karaman v. Pickrel, Schaeffer & Ebeling Co.*, Montgomery App. No. 21813, 2008-Ohio-4139,¶ 9, citing *155 N. High, Ltd. v. Cincinnati Ins. Co.,* 72 Ohio St.3d 423, 426, 1995-Ohio-85. "A trial court therefore possesses the 'inherent authority' to disqualify an attorney from acting as counsel where the

attorney 'cannot, or will not, comply with the Code of Professional Responsibility when representing a client'." Id., citing *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 259.

{¶ 17} "Issues of disqualification of counsel for conflicts arising as a result of former representation present the acutely sensitive dilemma of protecting the confidentiality of the client-attorney relationship without needlessly interfering with a litigant's freedom to proceed with legal counsel of choice. Disqualification of an attorney 'is a drastic measure which should not be imposed unless absolutely necessary.' " *Phillips v. Haidet*, 119 Ohio App.3d 322, 324, citation omitted. "Thus, when making a decision, the court must rely upon a thorough consideration of the facts." Id., citation omitted. Ohio courts have applied the following three-part test for disqualification of counsel due to a conflict of interest: (1) a past attorney-client relationship must have existed between the party seeking disqualification and the attorney he or she wishes to disqualify; (2) the subject matter of the past relationship must have been substantially related to the present case; and (3) the attorney must have acquired confidential information from the party seeking disqualification. *Kala v. Aluminum Smelting & Refining Co., Inc.,* 81 Ohio St.3d 1, 6, 1998-Ohio-439.

{¶ 18} Mr. Gisslen first argues that the trial court erred by failing to hold an evidentiary hearing before denying his motion. However, "the only instance in which the Supreme Court of Ohio has held that an evidentiary hearing is required is when 'ruling on a motion for disqualification of either an individual * * * or the entire firm * * * when an attorney has left a law firm and joined a firm representing the opposing party.' " *Luce v. Alcox*, Franklin App. No. 04AP-1250, 2005-Ohio-3373, citing *Kala*, supra. "There is nothing in

*Kala* to suggest that an evidentiary hearing is required on *all* motions to disqualify counsel." Id., citing *Harsh v. Kwait* (2000), Cuyahoga App. No. 76683.

{¶ 19} Furthermore, "[the] timeliness [of a motion to disqualify counsel] is not a fixed concept, but generally courts have held that the proper time within which to raise an objection is soon after the onset of litigation, * * * or at least within a reasonable time once the facts are known." *Stanley v. Bobeck*, Cuyahoga App. No. 92630, 2009-Ohio-5696, ¶ 9. "Moreover, a motion to disqualify counsel for conflict of interest should be denied based on waiver only where there is substantial proof that the movant's delay has resulted in serious prejudice to the opposing party, or where litigation has proceeded to the point where disqualification would create substantial hardship to the opposing party, or where it is clear that the moving party knowingly delayed the filing of the motion in order to cause such hardship or prejudice." Id.

{¶ 20} This case had been at issue for three years before Mr. Gisslen filed his motion. Most of the case had already been tried before the motion was filed. The only remaining evidence, submitted on the last hearing date, was the testimony of Mrs. Gisslen. Mr. Gisslen claims that he did not discover the conflict until he began representing himself. But he had been representing himself for six months before he filed the motion. Additionally, nothing in his motion indicates that he had observed, or even suspected, opposing counsel of using any confidential information during trial. In other words, Mr. Gisslen did not allege, after sitting through three-quarters of the evidence presented, that any confidential information had been acted upon, or that any action of opposing counsel had resulted in prejudice to his case.

{¶ 21} We conclude that the trial court did not abuse its discretion in denying the motion to disqualify. In reaching this conclusion, we are influenced by the fact that most of

the evidence had already been presented, and by the fact that there is nothing in either Mr. Gisslen's motion or the record to suggest any inappropriate use of confidential information by Mrs. Gisslen's counsel.

{¶ 22} The First Assignment of Error is overruled.

III

{¶ 23} The Second Assignment of Error raised by Mr. Gisslen provides as follows:

{¶ 24} "THE TRIAL COURT ERRED IN ALLOCATING AND DECIDING PARENTING RIGHTS AND RESPONSIBILITIES."

{¶ 25} Mr. Gisslen contends that the trial court abused its discretion when it suspended his parenting time with the minor children. He does not contest the award of custody to Mrs. Gisslen.

{¶ 26} This court, in *Schoenfelt v. Schoenfelt*, Montgomery App. No. 23497, 2009-Ohio-6594, has stated:

{¶ 27} "The trial court's discretion in parenting-time matters, while broad, is bounded by R.C. 3109.051. See *Braatz v. Braatz* (1999), 85 Ohio St.3d 40, 44, 706 N.E.2d 1218 (saying that R.C. 3109.051 'specifically and in detail addresses the granting of parental visitation rights') (Emphasis omitted). The outer bounds set by this section require the court's parenting-time decision to ensure that both parents have the opportunity for 'frequent and continuing contact with the child' and to be 'just and reasonable.' R.C. 3109.051(A). To help ensure a just and reasonable decision, paragraph (D) instructs the trial court to consider fifteen specific factors plus any other factor the court finds is in the child's best interest. *Braatz,* at 45,

706 N.E.2d 1218 ('[T]he trial court shall consider the fifteen factors enumerated, and in its sound discretion determine visitation that is in the best interest of the child.') (Citations omitted). These factors include: a child's relationships with her parents and siblings; the geographical locations of the parents' residences; the child's and parents' available time; the child's age; the child's adjustment to home, school, and community; the health and safety of the child; the amount of time the child will spend with siblings; and the mental and physical health of all concerned. R.C. 3109.051(D)." Id. at ¶ 7, 8 and 9.

{¶ 28} With regard to the issue of visitation, the trial court stated:

{¶ 29} "[Mr. Gisslen] has had extensive parenting time with the children, however, the manner in which he has exercised parenting questions his ability or inclination to allow parenting time to be a pleasant, non-traumatic experience for these young children. [Mr. Gisslen] videotapes or records all exchanges for parenting time and has requested the presence of the police at every exchange. These are sometimes referred to as 'safety checks' and have occurred 50 times. [Mr. Gisslen] is accused of recording all communications between himself and the children and himself and [Mrs. Gisslen]. The most recent allegation, which has caused [Mrs. Gisslen] to request supervised parenting time, is that [Mr. Gisslen] is photographing the children naked and then examining the photographs presumably for signs of abuse. [Mr. Gisslen] has filed several abuse-based complaints both as domestic violence and as complaints to the Children's Services in both Hamilton and Montgomery county. These allegations have been found to be without merit. Recently, while this case was pending, [Mr. Gisslen] refused to return the children after a Wednesday parenting time, and the children were retrieved from [Mr. Gisslen] through the intervention of Hamilton County law

enforcement. He went to Centerville schools and attempted to delay or prevent the enrollment of the younger child in kindergarten.

{¶ 30} "Without some professional intervention, it is the finding of the court that continued parenting time as previously ordered and as currently exercised is not in the best interests of the children.

{¶ 31} "It is therefore ordered that [Mrs. Gisslen] be awarded sole custody of the minor children and that she shall hereinafter be the residential parent and legal custodian. All parenting for [Mr. Gisslen] is hereby suspended until further court order."

{¶ 32} First, we cannot say that the trial court's decision constitutes an abuse of discretion. The trial court's findings are supported by the record. It is clear that Mr. Gisslen is, at best, combative with regard to visitation exchanges. His actions during visitation are not conducive to the mental health or the safety of the children. R.C. 3109.051(D)(7) and (9). The record demonstrates that Mr. Gisslen's issues with the exchanges and actual visitation are long-standing and not likely to resolve without some sort of counseling. Indeed, his behavior, instead of abating, appears to have escalated during the pendency of the case in the trial court. There is also evidence that the children have stated that they do not feel safe with Mr. Gisslen because of his actions. The evidence shows that the children even began refusing to go with Mr. Gisslen for his parenting time.

{¶ 33} Second, we disagree with Mr. Gisslen's claim that this decision is "indefinite and vague so as to deny due process." The trial court has, in our opinion, indicated that once Mr. Gisslen undergoes some sort of professional counseling, he will be able to make a motion to begin receiving parenting time, at which time the trial court would reconsider its

suspension. By requiring only "some professional intervention," the trial court sets a low threshold for reconsideration of the issue of parenting time, which should not be difficult for Mr. Gisslen to meet.

{¶ 34} We conclude that there is credible evidence upon which the trial court could find that Mr. Gisslen's actions are harmful to the children. We further conclude that Mr. Gisslen is on reasonable notice regarding the need to seek counseling.

{¶ 35} The Second Assignment of Error is overruled.


IV

{¶ 36} The Third Assignment of Error is as follows:

{¶ 37} "THE TRIAL COURT ERRED IN THE DIVISION AND ASSIGNMENT OF PROPERTY."

{¶ 38} In this assignment of error, Mr. Gisslen contends that the trial court abused its discretion by failing to "assign and allocate ownership" of $10,000 in marital funds. Mrs. Gisslen contends that this issue has been waived for review.

{¶ 39} During trial, counsel for Mr. Gisslen asked Mrs. Gisslen's mother, Elizabeth Sacksteder, whether Mrs. Gisslen had loaned her the sum of $10,000 to repair the roof of the residence where the parties had been living. Ms. Sacksteder acknowledged receipt of the money. She also indicated that the roof was not repaired and that the money had been returned to Mrs. Gisslen.

{¶ 40} It is not clear from the record when the money was given to Ms. Sacksteder or when it was returned to Mrs. Gisslen. Furthermore, there is no indication that the money

constituted marital property. The trial court, in an attempt to discern the nature of the funds, conducted the following colloquy:

{¶ 41} "THE COURT: If the issue is that Mrs. Gisslen raided a joint account of the parties that should be divided and took $10,000 out and, you know, the implication that you're trying to make is she gave it to her mother to hold for her, supposedly was given back to her. That's an accounting for funds that may or may not have to be divided. Is that what you're trying to do?

{¶ 42} "MR. BARBATO: Absolutely.

{¶ 43} "THE COURT: Okay. And if in fact during depositions Mrs. Gisslen testified that 'all that was spent for repairs for my mother's house' – is that what she testified to?

{¶ 44} "MR. BARBATO: Not that I'm aware of.

{¶ 45} "THE COURT: Okay. Well, then, I don't know. I'm just guessing here.

{¶ 46} "MR. BARBATO: That's fine.

{¶ 47} "THE COURT: All right. No, that's not fine. That's not what a trier of fact is allowed to do. So what other questions you want to ask Mrs. Sacksteder? She said she gave the money back to her daughter.

{¶ 48} "MR. BARBATO: When was that? That's news to me."

{¶ 49} While it is clear that this money existed at some point in time, there is no evidence that it was marital property or that it existed at the time of the hearing as a marital asset that the trial court failed to divide. The record reflects that the trial court did divide all the parties' assets. In its decision and judgment, the trial court stated that "there are no joint accounts in existence. Each party is hereby awarded any checking, savings, credit union

accounts in his or her own name." The court also noted that the parties had stipulated to this division.

{¶ 50} There is no evidence that the trial court abused its discretion with regard to the division of assets or that the trial court failed to divide the assets. Accordingly, the Third Assignment of Error is overruled.

V

{¶ 51} All of Mr. Gisslen's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

Copies mailed to:

Thomas G. Eagle
David P. Williamson
Hon. Timothy Wood