[Cite as *Gisslen v. Gisslen*, 2013-Ohio-3840.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY   COUNTY

| | | |
|---|---|---|
| THOMAS M. GISSLEN | : | |
| | : | Appellate Case No. 25666 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 07-LS-25 |
| v. | : | |
| | : | |
| KAREN M. GISSLEN | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of September, 2013.

. . . . . . . . . . .

THOMAS M. GISSLEN, 420 Wellesley Avenue, Cincinnati, OH   45224
        Plaintiff-Appellant, *pro se*

DAVID P. WILLIAMSON, Atty. Reg. #0032614, Bieser, Greer & Landis, LLP, 400 PNC Center, 6 North Main Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

HALL, J.,

{¶ 1}    Thomas Gisslen appeals from the trial court's February 5, 2013 decision and judgment resolving numerous post-divorce motions filed by the parties. Mr. Gisslen's ex-wife,

defendant Karen Gisslen, has cross appealed from the trial court's ruling.

{¶ 2} Mr. Gisslen advances four assignments of error in his appeal. First, he contends the trial court erred in not holding Mrs. Gisslen in civil contempt for failing to find a "re-introduction" therapist within a reasonable time. Second, he claims the trial court erred in denying his motion for parenting time. Third, he asserts that the trial court erred in denying his request for an order to take a foreign deposition of a therapist with prior involvement in the case. Fourth, he argues that the trial court erred in restricting his access to his children's school's employees and his children's medical providers. In her sole assignment of error on cross appeal, Mrs. Gisslen contends the trial court erred in refusing to allocate all counseling expenses to Mr. Gisslen.

{¶ 3} The record reflects that the parties married in 2003. They have two children together. The children were born in 2003 and 2005. Mr. Gisslen filed a complaint for divorce in 2007, and Mrs. Gisslen counterclaimed for divorce. Following a final hearing, the trial court filed an October 2010 decision dividing the parties' assets and liabilities and allocating parental rights and responsibilities. Among other things, the trial court awarded Mrs. Gisslen sole legal custody. Although Mr. Gisslen had received parenting time during the pendency of the divorce proceeding, the trial court denied him any parenting time, finding it not in the best interest of the children. In support of this decision, the trial court reasoned:

> [Mr. Gisslen] has had extensive parenting time with the children, however, the manner in which he has exercised parenting questions his ability or inclination to allow parenting time to be a pleasant, non-traumatic experience for these young children. [Mr. Gisslen] videotapes or records all exchanges for parenting time and has requested the presence of the police at every exchange. These are sometimes

referred to as "safety checks" and have occurred 50 times. [Mr. Gisslen] is accused of recording all communications between himself and the children and himself and [Mrs. Gisslen]. The most recent allegation, which has caused [Mrs. Gisslen] to request supervised parenting time, is that [Mr. Gisslen] is photographing the children naked and then examining the photographs presumably for signs of abuse. [Mr. Gisslen] has filed several abuse-based complaints both as domestic violence and as complaints to the Children's Services in both Hamilton and Montgomery county. These allegations have been found to be without merit. Recently, while this case was pending, [Mr. Gisslen] refused to return the children after a Wednesday parenting time, and the children were retrieved from [Mr. Gisslen] through the intervention of Hamilton County law enforcement. He went to Centerville schools and attempted to delay or prevent the enrollment of the younger child in kindergarten.

Without some *professional intervention*, it is the finding of the court that continued parenting time as previously ordered and as currently exercised is not in the best interests of the children.

It is therefore ordered that [Mrs. Gisslen] be awarded sole custody of the minor children and that she shall hereinafter be the residential parent and legal custodian. All parenting for [Mr. Gisslen] is hereby suspended until further court order.

(October 27, 2010, Decision at 7-8).

**{¶ 4}** In December 2010, the trial court filed a final judgment and divorce decree,

which included the same language suspending Mr. Gisslen's parenting time until further order and recommending that he receive "professional intervention." (December 6, 2010, Final Judgment and Divorce Decree at 4). Mr. Gisslen appealed, arguing, among other things, that the trial court abused its discretion in denying him parenting time. In June 2011, this court rejected his argument and affirmed in *Gisslen v. Gisslen*, 2d Dist. Montgomery No. 24414, 2011-Ohio-3105 ("*Gisslen I*"). With regard to parenting time, we reasoned:

> First, we cannot say that the trial court's decision constitutes an abuse of discretion. The trial court's findings are supported by the record. It is clear that Mr. Gisslen is, at best, combative with regard to visitation exchanges. His actions during visitation are not conducive to the mental health or the safety of the children. R.C. 3109.051(D)(7) and (9). The record demonstrates that Mr. Gisslen's issues with the exchanges and actual visitation are long-standing and not likely to resolve without some sort of counseling. Indeed, his behavior, instead of abating, appears to have escalated during the pendency of the case in the trial court. There is also evidence that the children have stated that they do not feel safe with Mr. Gisslen because of his actions. The evidence shows that the children even began refusing to go with Mr. Gisslen for his parenting time.

> Second, we disagree with Mr. Gisslen's claim that this decision is "indefinite and vague so as to deny due process." The trial court has, in our opinion, indicated that once Mr. Gisslen undergoes some sort of professional counseling, he will be able to make a motion to begin receiving parenting time, at which time the trial court would reconsider its suspension. By requiring only

"some professional intervention," the trial court sets a low threshold for reconsideration of the issue of parenting time, which should not be difficult for Mr. Gisslen to meet.

We conclude that there is credible evidence upon which the trial court could find that Mr. Gisslen's actions are harmful to the children. We further conclude that Mr. Gisslen is on reasonable notice regarding the need to seek counseling.

*Gisslen I* at ¶32-34.

{¶ 5} The record reflects that Mr. Gisslen began weekly counseling sessions with a clinical psychologist shortly after the trial court suspended his parenting time. Thereafter, on April 8, 2011, a magistrate filed a decision and order directing Mrs. Gisslen to "find a counselor who can facilitate a re-introduction between [Mr. Gisslen] and [the] children, with a goal to get parenting time restarted for [Mr. Gisslen], if appropriate." (April 8, 2011 Decision and Order at 4). Six months later, the trial court approved and adopted the magistrate's decision requiring Mrs. Gisslen to locate a re-introduction counselor. (October 4, 2011 Decision and Judgment at 4).

{¶ 6} In the following months, the parties filed motions addressing a variety of issues. As relevant here, they included Mr. Gisslen's motion for parenting time, a contempt motion filed by Mr. Gisslen, a motion by Mr. Gisslen for an order to take a foreign deposition, a request by Mr. Gisslen for access to his children's school's employees and his children's medical providers, and a motion by Mrs. Gisslen for an order allocating counseling expenses to Mr. Gisslen. A magistrate held several days of evidentiary hearings on these motions and others over a period of months. The magistrate later disposed of the motions in an August 30, 2012 decision and order.

In relevant part, the magistrate denied Mr. Gisslen's request for parenting time, declined to hold Mrs. Gisslen in contempt and denied Mr. Gisslen's motion to take a foreign deposition and his motion for access to his children's school's employees and his children's medical providers. The magistrate sustained Mrs. Gisslen's motion to allocate counseling expenses solely to Mr. Gisslen. (August 30, 2012 Decision and Order).

{¶ 7}    Mr. Gisslen filed objections to the magistrate's ruling. The trial court overruled all objections except one. The trial court sustained Mr. Gisslen's objection to the magistrate's decision making him pay all expenses for re-introduction counseling. The trial court ordered the parties to share this expense equally. In all other respects, the trial court upheld the magistrate's ruling and entered judgment accordingly. (February 5, 2013 Decision and Judgment). This timely appeal and cross appeal followed.

{¶ 8}    In his first assignment of error, Mr. Gisslen contends the trial court erred in not holding Mrs. Gisslen in civil contempt for failing to find a re-introduction therapist within a reasonable time.[1] As set forth above, a magistrate first ordered Mrs. Gisslen to locate such a therapist on April 8, 2011. The order did not mention a time frame. Mrs. Gisslen subsequently took thirteen months to choose a therapist to facilitate reunification of the children with Mr. Gisslen. In the proceedings below, she attributed her delay to the difficulty of finding a female therapist (an important issue for her) near her home who would accept her insurance. She also admitted warning prospective therapists that Mr. Gisslen had gone to "extremes" to "stalk" a former therapist. She explained that she wanted them to know the "potential risks" and "what

---

[1]Although Mr. Gisslen's assignment of error does not expressly distinguish between civil and criminal contempt, the first sentence of his argument references the standards governing civil contempt. (Appellant's brief at 5).

they were dealing with." (March 8, 2012 Transcript at 13-14). These gratuitous warnings undoubtedly winnowed the pool of willing therapists. In any event, in its ruling declining to hold Mrs. Gisslen in contempt, the trial court noted that as of May 2012, she had located a re-introduction therapist (ironically a male, Dr. Michael Williams) and that the children had begun seeing him.

{¶ 9}    On appeal, Mr. Gisslen insists that Mrs. Gisslen's thirteen-month delay in finding a therapist was unreasonable and that she intentionally sabotaged the process by frightening prospective candidates. Therefore, he claims a civil-contempt finding was warranted. Although we too question Mrs. Gisslen's dilatory approach to finding a therapist, we cannot say the trial court abused its discretion in declining to hold her in contempt. As a practical matter, the purpose of civil contempt is remedial or coercive. The goal is to compel compliance with a court order. *State v. Chavez-Juarez*, 185 Ohio App.3d 189, 2009-Ohio-6130, 923 N.E.2d 670 , ¶25 (2d Dist.). Here Mrs. Gisslen already had secured a re-introduction therapist by the time of the trial court's ruling. Thus, despite her delay, a civil-contempt finding no longer could have served its intended purpose of compelling obedience to the order to find a therapist.[2]   The only possible purpose of a civil-contempt sanction at this point would be to punish Mrs. Gisslen. But punishment is the purpose of criminal contempt, not civil contempt. This alone is a sufficient reason to find no abuse of discretion in the denial of Mr. Gisslen's motion. Accordingly, his first assignment of error is overruled.

---

[2]In a civil contempt case, "[o]nce the contemnor complies with the court's order, the purpose of the contempt sanction has been achieved and the sanction is discontinued." *In re Dantazsha M.*, 6th Dist. Lucas No. L-98-1277, 1999 WL 740266 (March 19, 1999). Here Mrs. Gisslen complied with the trial court's order before it could impose a contempt sanction. That compliance negated the purpose of a contempt sanction and would have required the discontinuation of any sanction imposed.

{¶ 10} In his second assignment of error, Mr. Gisslen challenges the trial court's continued suspension of parenting time. He argues that he complied with the prior order to seek professional intervention. Mr. Gisslen also notes his presentation of expert testimony that he does not suffer from paranoia. Rather, the expert explained that he has a relatively common "adjustment disorder" and poses no risk of harm to his children. Finally, Mr. Gisslen asserts that Mrs. Gisslen should not be rewarded for her thirteen-month delay in finding a re-introduction therapist by continuing to deny him parenting time.

{¶ 11} In finding Mr. Gisslen still not entitled to parenting time, the magistrate noted that he "monitors the internet all the time" and that he "investigates everyone he believes is a danger to his children." The magistrate also found that Mr. Gisslen had "gone to great lengths" to communicate with his children. Specifically, he sent a text message to a family friend in an effort to establish communication with the children. He also contacted members of Mrs. Gisslen's family and once circumvented a block on Mrs. Gisslen's telephone by "spoofing" it with a false name. The magistrate also noted that Mr. Gisslen had "voiced concerns" about his children's situation on his Twitter account, which he linked to redacted documents about the children. In addition, the magistrate found that Mr. Gisslen had sent private investigators to Florida to find information about psychologist Phyllis Walters, who was involved in the divorce proceeding. The magistrate further noted that Mr. Gisslen was still recording telephone conversations with his children. The magistrate also observed, however, that Mr. Gisslen had been participating in counseling with psychologist Jill Bley and had received an evaluation from psychologist Frederick Peterson. The evaluation revealed that Mr. Gisslen was experiencing "situational distress" that resulted in "suspiciousness of others, but not to the degree of paranoia." The evaluation found "no signs of psychosis or a personality disorder." The magistrate noted that Mr.

Gisslen had positive telephone conversations with his children. The magistrate described one conversation in particular as "very natural and playful." During the conversation, one of the children mentioned wanting to see Mr. Gisslen "so bad." Finally, the magistrate found that the children "know all about the court case from both sides." (August 30, 2012 Decision and Order at 3-6).

{¶ 12} In overruling Mr. Gisslen's objection to the magistrate's continued denial of parenting time, the trial court reasoned:

Here, a Decision and Judgment dated October 4, 2011 ordered that [Mr. Gisslen] continue counseling and that [Mrs. Gisslen] find a counselor who can facilitate re-introduction between [Mr. Gisslen] and the children. [Mr. Gisslen] testified that he attends counseling on a weekly basis with Dr. Bley, and that he is working on becoming a better parent during those therapy sessions. (Oct. 6, 2011 Tr. Page 52). However, [Mr. Gisslen] also admitted to recording numerous conversations with his daughters, as well as pretending to be calling from [Mr. Gisslen's] family's property in order to get around the "blocking device" that [Mr. Gisslen] claims [Mrs. Gisslen] installed on her home phone. (Oct. 6, 2011 Tr. Page 59, 68). Further, [Mr. Gisslen] acknowledges that his daughters have an inappropriate amount of knowledge concerning the current proceedings. (Oct. 6, 2011 Tr. Page 59).

Based on this testimony, it is not in the best interest of the parties' children for [Mr. Gisslen] to be awarded parenting time immediately. Although [Mr. Gisslen] has complied with the court's order to seek and continue counseling, his relationship with [Mrs. Gisslen] is still extremely contentious and both minor

children have witnessed the extreme tension between the parties. Further, the court ordered that reunification between [Mr. Gisslen] and his children be supervised by a counselor. The children began reunification therapy in May of 2012 with Dr. Michael Williams, and based on the children's best interest, any reunification should be supervised and facilitated by Dr. Williams.

(February 5, 2013 Decision and Judgment at 4).

{¶ 13}   Having reviewed the record, we cannot say the trial court abused its discretion in continuing to deny Mr. Gisslen parenting time (other than weekly telephone conversations). A trial court possesses broad discretion in matters such as these, and a parenting-time decision will not be reversed as an abuse of discretion unless the decision is unreasonable, arbitrary, or unconscionable. *Marinella v. Marinella*, 2d Dist. Montgomery No. 25449, 2013-Ohio-2932, ¶13. That is not the case here.

{¶ 14}   In refusing to reinstate parenting time, the trial court properly considered the statutory factors that guide a court's discretion. In particular, the trial court referenced "the prior interaction and interrelationships of the child with the child's parents, the health and safety of the child, the mental and physical health of all parties, and any other factor in the best interest of the child." (February 5, 2013 Decision and Judgment at 3).

{¶ 15}   Although Mr. Gisslen has complied with the requirement to seek professional counseling, the record still supports a finding that reinstating parenting time is not presently in the children's best interest. The record certainly demonstrates that Mr. Gisslen behaves oddly and is overly suspicious of others. He researches the internet, compiles lists of "dangerous people," records phone conversations, and engages in other monitoring behavior. The record also supports the trial court's finding that Mr. Gisslen's relationship with Mrs. Gisslen remains extremely

contentious and that the children have witnessed "extreme tension between the parties." (*Id*. at 4). As a result, the trial court reasoned that it was in the children's best interest for any reunification between Mr. Gisslen and his children to be supervised by a therapist. In this regard, the trial court observed that the children have begun seeing Dr. Williams for that purpose.

**{¶ 16}** Based on our review of the record, and in recognition of the substantial deference accorded to the trier of fact in these matters, we cannot say the trial court abused its discretion in continuing the suspension of parenting time pending continued re-introduction therapy and demonstrable progress by Mr. Gisslen. Accordingly, the second assignment of error is overruled.

**{¶ 17}** In his third assignment of error, Mr. Gisslen claims the trial court erred in denying his March 1, 2012 motion for an order to take a foreign deposition of Phyllis Walters. The record reflects that Walters is a psychologist with prior involvement in the case. She now resides in Florida.

**{¶ 18}** The magistrate denied Mr. Gisslen's motion, finding that information possessed by Walters is no longer relevant. Mr. Gisslen objected, but the trial court overruled the objection. In so doing, the trial court noted that Mr. Gisslen wanted to depose Walters to determine whether her records, which were relied on in the original divorce decree, were "incomplete." Mr. Gisslen sought this information with the hope of obtaining relief from the divorce decree under Civ.R. 60(B). The trial court found no basis for the requested deposition, reasoning:

> Here, [Mr. Gisslen] has provided no operative facts that show that he would be entitled to relief based on Dr. Walters', allegedly, incomplete records. Instead, [Mr. Gisslen] merely raises the possibility that Dr. Walters' records may have been incomplete and that there might be relevant evidence somewhere in those missing records, if they exist. However, [Mr. Gisslen] fails to provide any

concrete facts supporting his assertion that the records were incomplete during the original divorce proceeding, and fails to give any reasonable explanation as to how those missing records might pertain to the present proceedings.

(February 5, 2013 Decision and Judgment at 5-6).

{¶ 19} On appeal, Mr. Gisslen argues that he is entitled to depose Walters for two reasons. First, he points to testimony during the hearings below showing that Mrs. Gisslen has consulted with Walters post-decree and has paid Walters for those services. Mr. Gisslen essentially argues that he should be allowed to discover what these communications involved. Second, he asserts that he has "concerns" about Walters' investigation of the divorce case and that "[i]f [her] files revealed newly discovered information that *could* give rise to a Rule 60(B) [motion] or evidence that could lead to admissible evidence, [he] should be allowed to pursue it." (Appellant's brief at 13-14).

{¶ 20} Upon review, we see no abuse of discretion in the trial court's denial of Mr. Gisslen's request for an order to depose Walters. The fact that Mrs. Gisslen paid Walters for post-decree consultations is not itself a reason to allow Mr. Gisslen to depose the psychologist. In his reply brief, Mr. Gisslen argues that Walters' two roles (court-appointed expert during the divorce proceedings and post-decree consultant for Mrs. Gisslen) have created a conflict of interest. He argues that this conflict constitutes an exceptional circumstance entitling him to depose Walters to determine whether any "fowl (sic) play" exists for purposes of Civ.R. 60(B) relief. (Appellant's reply brief at 5). We disagree. Even assuming, purely arguendo, that Mrs. Gisslen's consultations with Walters have created some conflict, that conflict did not arise until after the divorce decree. We fail to see how Mrs. Gisslen's post-decree act of consulting Walters could provide grounds for Civ.R. 60(B) relief from the divorce decree. With regard to Mr.

Gisslen's concerns about Walters' investigation during the divorce proceedings, our review of the hearing transcripts reveals nothing more than non-specific suspicions. Absent something more concrete from Mr. Gisslen, we cannot say the trial court abused its discretion in rejecting his attempt to re-open an issue that either was or could have been addressed before the divorce decree was filed.[3] The third assignment of error is overruled.

{¶ 21}  In his fourth assignment of error, Mr. Gisslen contends the trial court erred in restricting his access to his children's school's employees and his children's medical providers. This issue stems from the magistrate's order that granted Mr. Gisslen access to information about his children's medical care and education. The magistrate provided for Mr. Gisslen to receive this information via e-mail from Mrs. Gisslen. The magistrate prohibited Mr. Gisslen from directly contacting school employees or medical providers until further order.  (August 30, 2012 Decision and Order at 7-8). Over Mr. Gisslen's objection, the trial court upheld this restriction, citing his documented suspicion of others and his appearance at his daughter's school, where he spoke with staff during a school activity. (February 5, 2013, Decision and Judgment at 7).

{¶ 22}  On appeal, Mr. Gisslen defines the issue before us as "[w]hether a parent shall be denied access to his children's medical and school records when the testimony does not support a finding of fact that such prohibition is in the best interest of the children." (Appellant's brief at 14). Nowhere in its ruling, however, did the trial court deny Mr. Gisslen access to his children's *records*. Until further order, the trial court simply prohibited Mr. Gisslen from "contact[ing] the children's medical and educational providers directly." (February 5, 2013, Decision and

---

[3]Mr. Gisslen has admitted being suspicious of Walters when she examined him during the divorce proceedings. (*See, e.g.*, November 30, 2011 transcript at 34).

Judgment at 7). We do not interpret this restriction as a prohibition on Mr. Gisslen obtaining his children's records. He may obtain those records from Mrs. Gisslen, who has been ordered to supply him with the information via e-mail. Based on our review of the record, we cannot say the trial court abused its discretion in prohibiting Mr. Gisslen from directly contacting school employees and medical providers. The fourth assignment of error is overruled.

{¶ 23}   We turn now to Mrs. Gisslen's cross appeal. In her sole assignment of error, she challenges the trial court's refusal to allocate to Mr. Gisslen all expenses incurred as a result of the re-introduction therapy.

{¶ 24}   Mrs. Gisslen argues that Mr. Gisslen should pay the entire cost of the re-introduction therapy because his actions caused it to be necessary. Although the magistrate agreed with her, the trial court sustained Mr. Gisslen's objection. The trial court ordered the parties to split the cost equally. In support, it noted that the divorce decree required the parties to divide all such expenses equally. It then reasoned:

> Here, the Magistrate Decision and Permanent Order to modify the child support obligation [by requiring Mr. Gisslen to pay for the re-introduction counseling] was not based on a change in circumstances for either party. [Mrs. Gisslen] argued that she felt [Mr. Gisslen] should be responsible for the payment of the psychological expenses because he is the reason the children need to see a therapist. However, at the time of the parties' divorce, the children and [Mr. Gisslen] had a strained relationship. Therefore, there has been no change in circumstances. [Mrs. Gisslen] did not demonstrate an inability to comply with the language in the Decree order that the parties should divide the expenses equally for the time being.

(February 5, 2013, Decision and Judgment at 11).

{¶ 25}  We see no abuse of discretion in the trial court's ruling. Despite Mrs. Gisslen's argument that Mr. Gisslen's inappropriate behavior constitutes a change in circumstances since the divorce decree, the trial court reasonably concluded otherwise. We note too that the trial court's order for re-introduction therapy was not in response to escalating misbehavior by Mr. Gisslen. Rather, the trial court ordered re-introduction therapy at Mr. Gisslen's request to help facilitate the commencement of parenting time. (*See* October 4, 2011, Decision and Judgment). Finally, the matter of payment for continuing re-introduction counseling is still subject to the order of the court in the event that circumstances require a modification. Mrs. Gisslen's assignment of error is overruled.

{¶ 26}  Based on the reasoning set forth above, the trial court's judgment is affirmed.

. . . . . . . . . . . . .

WELBAUM and YARBROUGH, JJ., concur.

(Hon. Steve A. Yarbrough, Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Thomas M. Gisslen
David P. Williamson
Hon. Timothy D. Wood