[Cite as *Wang v. Ceccarell*, 2023-Ohio-3425.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

YINLING WANG AKA JOYCE WANG,

Plaintiff-Appellee,

v.

MATTHEW CECCARELLI,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 CO 0036**

---

Domestic Relations Appeal from the
Court of Common Pleas, Domestic Relations Division
of Columbiana County, Ohio
Case No. 2017-DR-152

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Meeta A. Bass*, 315 Fallriver Drive, Reynoldsburg, Ohio 43068, for Plaintiff-Appellee and

*Atty. James R. Wise*, 91 W. Taggart PO Box 85, East Palestine, Ohio 44413, for Defendant-Appellant.

Dated:  September 21, 2023

**Robb, J.**

{¶1} Appellant-father Matthew Ceccarelli appeals the decision of the Columbiana County Common Pleas Court, Domestic Relations Division. He contends the modification of parenting time to follow the schedule proposed by Appellee-mother Yinling (Joyce) Wang was not supported by the statutory factors and claims the court was biased against him. He also claims it was unreasonable to prohibit the parties from video recording during the exchange of the child and to order the parties to use a program to facilitate their communications. For the following reasons, the trial court's decision is affirmed.

<u>STATEMENT OF THE CASE</u>

{¶2} The parties were divorced in 2018. The mother was named the residential parent of their child with the father exercising parenting time three Friday overnights per month and one or two three-hour mid-week visits. (2/8/18 Mag. Dec. & J.E.; 7/9/18 J.E.). Supervised visitation was imposed after the father failed to return the child in protest of the court's decision rejecting his objections. Soon thereafter, the father's parenting time was increased to standard visitation under the local schedule (every other weekend, one three-hour visit on Tuesdays, and one three-hour visit every other Thursday). (12/3/18 Mag.Dec.; 5/7/19 J.E.). Both parties filed contempt motions over the years.

{¶3} In 2021, the father filed a motion to expand parenting time and other motions, including contempt. The mother sought modification of parenting time as well (and requested more specific instructions due to the father's interpretation of various terms). Both parties filed proposed parenting time schedules. The father sought longer mid-week visits (from 4:00 p.m. to 8:30 p.m.) and wished to add Sunday from 10:00 a.m. to 5:00 p.m. on weekends not designated for overnights. The mother proposed an elimination of the father's mid-week visits but with an expansion of his weekend visits to every Friday at 6:00 p.m. until Saturday at 2:00 p.m. with a second overnight every other weekend until Sunday at 7:00 p.m. She asked for any recording of exchanges to occur at least five feet away from her and for all communications to occur through the Our Family Wizard program.

Case No. 22 CO 0036

{¶4} After a hearing on the motions, the magistrate adopted the mother's proposal and additionally prohibited the recording of exchanges. (2/18/22 Mag. Dec. & J.E.). The father filed timely objections arguing, in pertinent part, the modified parenting time schedule was inconsistent with his employment schedule and generally contending the adoption of visitation rules merely because the mother asked for them was contrary to the child's best interest. (He also argued the child should be allocated to him for income tax purposes.)

{¶5} Although the time for supplementing objections had passed and the mother had already filed her response, the father was granted an extension (until July 1) to file a brief in support of his objections. After his attorney withdrew, his new attorney sought leave to file amended objections, which were then filed on August 1, 2022. In relevant part, the father's amended objections argued the decision to adopt the mother's proposed parenting time was not in the child's best interest, pointing to his request for two additional Sundays per month and for an extension of mid-week visits until 8:30 p.m. He also suggested the decision lacked sufficient findings. (Additional objections were outlined dealing with phone contact and attendance at medical appointments.)

{¶6} As the amended objections did not incorporate the prior objections, the mother asks this court to disregard the father's initial objections. Still, the trial court said it reviewed the objections and the amended objections (essentially construing them as supplemental objections).

{¶7} On August 25, 2022, the trial court overruled all objections, affirmed the magistrate's decision (which its prior entry adopted in full), and entered judgment, adopting and attaching the mother's parenting time schedule (including the requirement to use Our Family Wizard with an addition of the prohibition on recording exchanges). The father filed a timely notice of appeal.

ASSIGNMENT OF ERROR ONE: PARENTING TIME

{¶8} The father sets forth four assignments of error, the first of which contends:

"The Trial Court erred in adopting the Amended Proposed Parenting Times filed by the Plaintiff."

{¶9} We review a trial court's decision to modify parental visitation for an abuse of discretion. *Braatz v. Braatz*, 85 Ohio St.3d 40, 44, 706 N.E.2d 1218 (1999). An abuse

of discretion is more than an error of judgment; it exists when the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "[W]hen applying this standard, an appellate court is not free to substitute its judgment for that of the trial judge." *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990). Modification of parental visitation is subject to an analysis of the child's best interest. *Braatz*, 85 Ohio St.3d at 45.

{¶10} In establishing a parenting time schedule or determining other parenting time matters, the court shall consider the following factors: (1) the child's prior interaction and interrelationships of the child with the parents, siblings, and other relatives; (2) the geographical locations and distances between the parents' houses; (3) the time available to the child and the parents considering vacation, employment, and school schedules; (4) the child's age; (5) the child's adjustment to home, school, and community; (6) the child's wishes and concerns if the court interviewed the child; (7) the child's health and safety; (8) the time available for the child to spend with siblings; (9) the mental and physical health of all parties; (10) each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights; (11-12) involving certain convictions or reason to believe a parent acted in a manner resulting in a child being an abused or neglected child; (13) whether the residential parent continuously and willfully denied court-ordered parenting time; (14) whether either parent established or plans to establish an out-of-state residence; (15) the parents' wishes and concerns as to non-parental companionship; and (16) any other factor relevant to the child's best interest. R.C. 3109.051(D). Clearly, not every factor is relevant to each case.

{¶11} The father complains the trial court did not cite the statute applicable to modification of parenting time or expressly set forth the best interest factors therein. He says the modification of parenting time as requested by the mother was unreasonable, claiming her proposed schedule did not provide "frequent and continuing contact" and suggesting his proposed schedule would have ensured sufficient contact with the child.

{¶12} The mother notes the father did not request additional findings of fact and conclusions of law, even though the relevant rule provides, "a magistrate's decision may be general unless findings of fact and conclusions of law are timely requested by a party or otherwise required by law." Civ.R. 53(D)(3)(a)(ii). Additionally, there is no statutory

mandate for a court to address each best interest factor separately, and we presume the court considered the factors absent evidence to the contrary. *Redmond v. Davis*, 7th Dist. Columbiana No. 14 CO 37, 2015-Ohio-1198, ¶ 69-73, citing *In re Henthorn*, 7th Dist. Belmont No. 00BA37 (Nov. 28, 2001). Here, the court expressly stated the schedule proposed by the mother was reasonable and "ensures the opportunity for both parents to have continuing and frequent contact with the child and it is in the best interest of the minor child." The magistrate made multiple findings in support of this statement, and the trial court said the statement was fully sustained by a review of the record. For the following reasons, we agree.

{¶13} Initially, on certain features of the modification, we note the father was not a non-movant attempting to keep his same parenting time schedule; he too sought to modify the schedule. A major request in his motion was to see the child every weekend (by adding two nine-hour Sundays). Under the schedule adopted by the court, the father will see the child every weekend. Approximately, the total days in a typical four-week period decreased from 13 to 10 days, but the total hours increased from 114 to 138 hours.

{¶14} As the court emphasized, the more consolidated schedule greatly decreases the number of exchanges. For instance, instead of 16 exchanges in a four-week period, there are now only 8 exchanges. The court reasonably expressed hope the modification would "end the difficulties that the parties continually experience" surrounding the exchanges. Rationally, fewer exchanges will translate to fewer chances for controversy (such as lateness or recording issues).

{¶15} The court identified the exchange site and reviewed exhibits containing maps of the routes to the place of exchange. As the court observed, the new schedule will preserve the father's parenting time while not only reducing the number of exchanges but also reducing the amount of driving time the child must experience. This shows the court considered the geographic location and distance between the parents' residences and considered the fact that the mother's residence was located out-of-state (in Pennsylvania). *See* R.C. 3109.051(D)(2) (location and distance), (14) (out-of-state residence). The father complains the mother chose to relocate to the Pittsburgh area. The mother points out her move occurred during the divorce years ago and her subsequent moves were within the same area. Regardless, it was not unreasonable to

believe decreased travel time for a young child would be in the child's best interest. (In fact, as the trial court observed, it would decrease driving time for both parents, which can contribute to a child's best interest as well.)

**{¶16}** Furthermore, it was noted the father was routinely late when returning the child on mid-week nights. *See* R.C. 3109.051(D)(10) (willingness to facilitate the other's parenting time). There is no credible indication the mother, as the residential parent, continuously and willfully denied court-ordered parenting time. *See* R.C. 3109.051(D)(13). The court believed the mother's testimony opining a later mid-week exchange time (as requested by the father) would have a detrimental effect on the young child, who was in morning preschool and would be starting kindergarten. *See* R.C. 3109.051(D)(3) (school schedule). The mother also opined if the mid-week visits were consolidated to weekends, then the child would be less tired, would have more weekday time to enroll in extracurricular activities, and would not be detrimentally affected by not seeing her father during the week (because she would be seeing him every single weekend). (Tr. 115-117, 155-157). Accepting the validity of the mother's opinion was within the fact-finder's discretion. In any case, the father's testimony also recognized the child's "stress" over the travel time, acknowledging he did not believe it was good for her. (Tr. 75). *See* R.C. 3109.051(D)(7) (child's health and safety).

**{¶17}** The court discussed the father's 7:00 a.m. to 7:00 p.m. work schedule while noting the schedule was inconsistent which made it difficult to schedule parenting time. The father said he worked three to four twelve-hour days a week. During some of his scheduled weekday visits, the father was at work, which was 20 to 30 minutes from his home; if the mid-week nights were extended later, the time for visiting would still be minimal. *See* R.C. 3109.051(D)(3) (time available to the parents).

**{¶18}** The date of birth set forth in the magistrate's February 12, 2022 decision shows the child was five years old at the time. *See* R.C. 3109.051(D)(4) (age). There was no interview of the child. *See* R.C. 3109.051(D)(6) (child's wishes and concerns if interviewed). As she was an only child, there was no need to discuss siblings. *See* R.C. 3109.051(D)(1),(8). The court discussed the child's interaction with other relatives, such as the paternal grandparents; the father regularly used his parents for transportation of the child, and they watched the child during his parenting time when he was at work. The

court analyzed the summer vacation schedule, including why a week-to-week schedule would eliminate the opportunity for the child to travel with the mother to visit maternal relatives (who lived in China). The court opined the father attempted to deprive the mother of a local support system by refusing to exchange the child with the mother's friend (who was the mother of the child's friend). *See* R.C. 3109.051(D)(1). The parties' poor communication and ability to compromise was also discussed. *See* R.C. 3109.051(D)(16). *See also Kelley v. Kelley*, 6th Dist. Wood No. WD-20-010, 2020-Ohio-6778, ¶ 23-28 (an order implementing Our Family Wizard can demonstrate consideration of factors such as willingness to facilitate the other parent's parenting time or to reschedule missed parenting time).

{¶19} In sum, the decisions on review demonstrated the trial court's consideration of the best interest factors. Additionally, "[c]redibility is a question for the trier of fact who occupies the best position from which to judge demeanor, voice inflection, gestures, eye movements, nervousness, and other signs of untruthfulness as a witness is testifying." *In re L.G.*, 7th Dist. Belmont No. 20 BE 0006, 2020-Ohio-6831, ¶ 48. These indicators do not transfer well onto the written page but are crucial in cases such as this, where there may be much in a party's attitude and demeanor that will not be evident in the written record. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418-419, 674 N.E.2d 1159 (1997). The magistrate saw and heard the witnesses as they testified and was in the best position to judge their credibility, sincerity, and attitude and to weigh the evidence, which is the trial court's primary function and prerogative. *See id.* Moreover, as the trial court concluded, the modification of parenting time to consolidate the schedule served to preserve the father's time. The decision on the competing motions to modify parenting time was not an abuse of discretion. Accordingly, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR TWO: RECORDING OF EXCHANGES</u>

{¶20} The father's second assignment of error provides:

"The Court erred in ordering that neither party shall record parenting time exchanges."

{¶21} On the topic of recording exchanges, the mother's proposal asked for an order requiring the father to stay five feet away from her when he was recording at exchanges. The magistrate decided neither party would be permitted to video record the

exchanges.  One of the father's initial objections generally argued the adoption of "certain criteria and rules for the exercise of visitation advocated by" the mother was contrary to the child's best interest.  His amended objections did not add any argument that could be construed as being related to the topic of recording at the exchanges.

**{¶22}** "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection."  Civ.R. 53(D)(3)(b)(ii).  The rule continues:

> Waiver of Right to Assign Adoption by Court as Error on Appeal. Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

Civ.R. 53(D)(3)(b)(iv).

**{¶23}** As the mother emphasizes, the father's objections did not sufficiently preserve this issue for appeal.   Still, the trial court addressed the recording issue and agreed with the magistrate's decision to ban video recording at exchanges.  In addition to finding there were video cameras at the parties' long-standing place of exchange, the magistrate opined:  "There have been no issues at exchanges which would make video recording necessary. A parent video recording exchanges, under these circumstances, sends a horrible message to the child and is nothing more than another form of intimidation."   The trial court reiterated these findings in the judgment adopting the magistrate's decision.

**{¶24}** Appellant claims there was no evidence his video recording during exchanges would negatively affect the child.  He points to the protective aspects of recording.  He testified he wished to avoid he-said/she-said issues, claiming the mother manipulated a prior situation. (Tr. 56).  He urges a party should not have to rely on a business's cameras for evidence and cites his opinion that the place of exchange (Sheetz) did not have security cameras while it was under construction.  (Tr. 57).

**{¶25}** Determining whether video recording at exchanges of the child can negatively affect a child is within the court's discretion. *See generally Gisslen v. Gisslen,* 2d Dist. Montgomery No. 24414, 2011-Ohio-3105, ¶ 29, 32, 34 (finding no abuse of

discretion where the trial court included the father's recording of exchanges as an example of his failure to make visitation non-traumatic). The mother asked the court to order the father to keep his camera at least five feet away from her at exchanges, and the father's testimony supporting the benefits of continual recording was vague. The fact-finder listened to the claims and could reasonably decide the father was the party who manipulated situations and the recording situation was not in the child's best interest considering the history of the case. It was not unreasonable, arbitrary, or unconscionable to decide to discontinue the father's practice of recording exchanges. We do not substitute our judgment for that of the fact-finder. This assignment of error is overruled.

ASSIGNMENT OF ERROR THREE:  COMMUNICATIONS

{¶26}  The father's third assignment of error alleges:

"The Court erred in ordering that the parties use Our Family Wizard."

{¶27}  Among various other requests, the mother's proposed parenting time schedule asked the court to require the parties to communicate about the child through Our Family Wizard, and the magistrate agreed. The father's initial objections generally argued the adoption of "certain criteria and rules for the exercise of visitation" requested by the mother was contrary to the child's best interest. There was no reference to the Our Family Wizard requirement for contact between the parties. (We also note it was not solely for visitation communication.) The amended objections did not raise any complaint with the communication method between the parents (either generally or specifically).

{¶28}  The mother accordingly argues the father waived his complaint about the use of Our Family Wizard for purposes of appeal, as he did not specifically object to the requirement. As set forth in the prior assignment of error, an appellant waives all but plain error on appeal of the court's adoption of any factual finding or legal conclusion where there was no specific objection stating all grounds for objection with particularity. Civ.R. 53(D)(3)(b)(ii),(iv).

{¶29}  In any event, there was no error, plain or otherwise. The trial court found it was reasonable for the magistrate to require the parents to use Our Family Wizard to communicate about the child based on the totality of the record. The father believes he was ordered to use this program to communicate based on one issue with an exchange (which resulted when the mother's flight was delayed). However, this was used as an

Case No. 22 CO 0036

example of the father texting at some times and emailing at other times (and then forgetting to send the email); it was not the only reason for the communication requirement.

**{¶30}** In upholding the Our Family Wizard requirement, the court pointed out the parties "do not communicate well" as supported by the entirety of the record. The court noted the mother has three phones, after obtaining extra phones because the father called her regular phone excessively even though he often failed to answer when she called him. The mother emphasizes: the father called her 72 times one day; she obtained additional phones after being unable to use her regular cell phone due to the father's incessant communications; he then added all her phone numbers to a group so his communications are sent to all phones; and she wanted to cancel a phone to save money. (Tr. 126, 142, 160). In fact, the father's testimony complained about communication issues as well, complaining the mother did not set up voicemail on one of her phones. (Tr. 38).

**{¶31}** Court-ordered use of a program such as Our Family Wizard is not unusual or new but is a valid option implemented in various domestic relations and juvenile courts across the state. *See, e.g., S.P. v. M.G.*, 2d Dist. Greene No. 2020-CA-42, 2021-Ohio-1744, ¶ 113; *Dreisilker v. Carrelli*, 12th Dist. Warren No. CA2015-06-052, 2016-Ohio-342, ¶ 5, 17; *Robinette v. Bryant*, 4th Dist. Lawrence No. 14CA28, 2015-Ohio-119, ¶ 59; *Wright v. Wright*, 5th Dist. Stark No. 2012CA00232, 2013-Ohio-4138, ¶ 25. Where a parent argued the trial court erred in ordering the parties to communicate only through the Our Family Wizard website, the appellate court found the trial court did not abuse its discretion in ordering this communication restriction where the appellant had a history of using standard communication methods to harass the other parent. *Robinette*, 4th Dist. No. 14CA28 at ¶ 59 (and finding no issue with the decision to allow monitoring of the communications by the court, guardian ad litem, and attorneys), citing *Wright*, 5th Dist. No. 2012CA00232. Prior contempt motions can also indicate issues that would benefit from an order to use Our Family Wizard to communicate. *S.P.,* 2d Dist. No. 2020-CA-42 at ¶ 113.

**{¶32}** Considering the totality of the record, the trial court did not abuse its discretion in ordering the parties to use Our Family Wizard to communicate with each

other. The magistrate noted the court's history of being required to micromanage the case. As the mother points out, the program will facilitate the organization of communications, retain information, and make the parties more mindful of their requests and wording. A court hearing the evidence in this case can reasonably conclude the use of such a program will streamline communications about the child with hopes of improving the quality of communications, which will be preserved in the program. This assignment of error is overruled.

ASSIGNMENT OF ERROR FOUR: BIAS

{¶33} The father's final assignment of error claims:

"The Court, both Magistrate and Judge, showed an obvious bias towards the Defendant."

{¶34} Again, the mother points out an objection to a magistrate's decision must be specific and state with particularity all grounds for objection. Civ.R. 53(D)(3)(b)(iv). The failure to do so waives all but plain error on an appeal of the trial court's adoption of any factual finding or legal conclusion. Civ.R. 53(D)(3)(b)(ii). Although the father's brief on appeal uses quotes from the magistrate's decision (adopted by the trial court) in an attempt to show bias, not one objection was relevant to this argument. The mother also points to the father's failure to use the following provision in the rule: "Disqualification of a magistrate for bias or other cause is within the discretion of the court and may be sought by motion filed with the court." Civ.R. 53(D)(6).

{¶35} In any event, the cited statements in the magistrate decision adopted by the trial court do not evince bias. Likewise, the language in the trial court's judgment entry does not exhibit bias or rise to the level of an unarticulated due process violation. *See In re Disqualification of Zmuda*, 149 Ohio St.3d 1241, 2017-Ohio-317, 75 N.E.3d 1255, ¶ 11 (although an affidavit of disqualification is within exclusive jurisdiction of the chief justice, a criminal defendant can raise a due process argument to the appellate court on a biased judge).

{¶36} The father begins by complaining about the magistrate's observation that he "parsed every word of Local Rule 9.4 in an effort to gain even a small advantage." Evidence supporting this observation existed in the history of the case and was presented by the mother as an exhibit at this hearing. As an example, the local rule provides time

with the child on the parent's birthday; in failing to show up for the exchange at the end of the day and in keeping the child overnight, the father declared, "on earth we define a 'day' as a period of 24 hours." Ironically, this assignment of error continues in the same vein as the practice cited by the magistrate.

{¶37} There are statements criticizing both parties; some of which were obviously meant to encourage cooperation and to decrease arguments (and thus court filings). Various statements lecturing or criticizing the father were supported by the evidence, rational inferences to be drawn from the evidence, and prior filings in the case.

{¶38} For instance, in rejecting a request for the tax deduction (which decision was not appealed), the court criticized the existence of a child support arrearage. The arrearage occurred because the father voluntarily quit more than one job after his employers would not provide the schedule he requested; he also suggested he would quit again if scheduling issues arose. As the magistrate observed at the close of the hearing, the father improperly threatened to quit his job if the court did not provide him parenting time on the weekend after the hearing. (Tr. 166). This threat made on the record to the court warranted an admonishment.

{¶39} Finally, statements of frustration, lecturing, and scolding are within a court's prerogative and often part of a judicial strategy, especially when attempting to protect a child's best interest. Disagreements on the weight of the evidence and available inferences do not rise to the level of bias arguments. This assignment of error is without merit.

{¶40} For the foregoing reasons, the trial court's judgment is affirmed.


Waite, J., concurs.

Hanni, J., concurs.

Case No. 22 CO 0036

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Domestic Relations Division of Columbiana County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**